First degree murder; sentence: life imprisonment. Robbery; sentence: ninety-nine years' imprisonment.
Anthony Tillis testified that he was playing basketball with appellant on December 1, 1978, when Vicky Terrell approached them and asked if they wanted to go to the store with him. The two teenage males *Page 169 
agreed to accompany Terrell to the store and began to walk with him. As they walked, Terrell pulled out a gun and asked the boys if they wanted to rob the man at the service station "again." Tillis told Terrell he was afraid and refused to accompany them. However, appellant said he would go and Terrell and appellant continued on to the filling station. Tillis remained behind, but from where he stood he observed appellant and Terrell come around the filling station as they were chased by a man brandishing a stick. He saw Terrell shoot the man and reach into his pocket and take his money. Appellant picked up the man's stick and fled behind Terrell, later dropping the stick.
Tillis also described the location of the filling station, identified later in the trial as the Campbell Station, and stated the three boys had robbed it once before without being caught.
Dr. Joseph Embry, a forensic pathologist for the State, examined the body of the filling station attendant, Carnes E. Stover, on December 2, 1978. He determined the cause of death to have been a gunshot wound to the chest. Coroner Bill Bragg also testified that the cause of death was a gunshot wound to the chest.
After the State rested its case, the trial judge allowed the State to reopen its case to introduce the testimony of Betty Campbell. Mrs. Campbell stated she was bookkeeper for the Campbell Oil Co. and that their service station on North 3rd Street, operated by C.E. Stover, was the station which had been robbed on December 1, 1978. The records which she kept for the company indicated that the pump readings showed that $227 was missing as a result of the robbery.
After the State rested, appellant called Tommy L. Pinkard, who stated he was appellant's school counselor with the CETA program. Pinkard testified that when he first examined appellant he was performing at a 3.8 grade level. However, within four months time in the CETA program, appellant's grade level performance rose to a level of 4.8. Appellant rested without calling any other witness.
 I
Appellant was tried under a two-count indictment which charged him separately with the crimes of murder and robbery. He asserts his dual convictions and sentences under such an indictment entitled him to a mistrial.
Appellant made no pretrial motion or objection in any form to the dual crime, dual count indictment. Only after both the State and defense rested did appellant make a casual reference to the fact that the counts "should have been severed." No request for severance or election was filed by appellant at any point, before, during or after trial. This issue appears to be thus raised on its merits for the first time on appeal. Review on appeal is limited to a review of questions properly and timely raised at trial below. Frye v. State, 369 So.2d 892
(Ala.Cr.App. 1979).
In any event, it has long been held that murder and robbery may properly be joined in the same indictment under separate counts, as being of the same family or general nature of offenses. Smelcher v. State, 33 Ala. App. 326, 33 So.2d 380
(1947); Sanders v. State, 278 Ala. 453, 179 So.2d 35 (1965). As well, evidence of both offenses was properly admitted since the murder and robbery constituted one criminal transaction made up of two chronologically close criminal acts. Sanders, supra.
We are mindful of the fundamental principle that a single crime may not be subdivided into multiple offenses, nor a series of charges based on the same act. Baldwin v. State,47 Ala. App. 136, 251 So.2d 633 (1971); Crosswhite v. State,31 Ala. App. 181, 13 So.2d 693 (1943). Although combined in one transaction, appellant clearly committed two separate and distinct criminal acts, bearing two criminal intents, i.e., the intent to rob and the intent to kill. Colston v. State,350 So.2d 337 (Ala. 1977); Yelton v. State, 56 Ala. App. 272,321 So.2d 234, cert. denied, 294 Ala. 745, 321 So.2d 237 (1975). Appellant's acts, the shooting and *Page 170 
the robbery, constituted two criminal offenses or actions. It is legally possible to try and convict a defendant for two or more offenses at one trial where the indictment properly joins several offenses depending upon separate criminal acts or actions. Brooms v. State, 197 Ala. 419, 73 So. 35 (1916).
When an attempt is made to convict an accused of two or more offenses growing out of the same transaction, a defendant may timely move the court to compel an election. Wilcox v. State,401 So.2d 794 (Ala. 1981).
It is within the province of the jury to return a specific verdict as to each count of an indictment. Murry v. State,48 Ala. App. 89, 261 So.2d 922 (1972). Where there is evidence of separate and distinct acts constituting separate criminal offenses, separate convictions and sentences may be had under multiple counts of an indictment. Boatner v. State, 8 Ala. App. 361,63 So. 33 (1913); see Wildman v. State, 42 Ala. App. 357,165 So.2d 396 (1963), cert. denied, 276 Ala. 708, 165 So.2d 403
(1964).
We find also that appellant's convictions are in no way violative of Whalen v. United States, 445 U.S. 684,100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).
Under the present state of the record, we find no reversible error in this regard.
 II
Appellant asserts the trial court erred in refusing to continue the case in order to provide him with a lunacy and competency hearing prior to trial. Another circuit judge approved a mental examination for appellant and by order dated February 9, 1981, directed the superintendent of Bryce Hospital to conduct such an examination. By letter, dated October 21, 1981, the Director of Bryce Hospital declined to conduct such an examination because appellant was not in confinement as required by § 15-16-20 and § 15-16-21, Ala. Code 1975.
On November 16, 1981, appellant argued a motion for continuance before the present trial judge because the prior judge's order directing a mental status examination had not been complied with. At the hearing on appellant's motion, appellant offered no evidence of incompetency other than a reference to the presence in appellant's court file of school records indicating he had an I.Q. of fifty to fifty-five. The record of appellant's I.Q. and the fact that an earlier judge had ordered an examination were asserted as the basis for the motion for continuance to allow for a mental status examination.
A defendant does not have a right to a mental examination whenever he requests one. Rather, this is a matter within the discretion of the trial judge, with the defendant bearing the burden on a motion for a competency investigation of persuading the court that a reasonable and bona fide doubt exists as to the defendant's mental competency. Miles v. State,408 So.2d 158 (Ala.Cr.App. 1981), cert. denied, 408 So.2d 163 (Ala. 1982).
The standard of appellate review in this matter is whether the trial judge abused his discretion. Beauregard v. State,372 So.2d 37 (Ala.Cr.App.), cert. denied, 372 So.2d 44 (Ala. 1979). There is no mandatory duty of the trial court to appoint a lunacy commission or to procure the report of a state hospital; these are simply aids for advisory purposes when the court views them as potentially helpful. Miles, supra.
The allegations and evidence presented at the motion on the competency hearing included in the present record were only general, conclusory and nonspecific. While there is a reference to school records of appellant's I.Q., no such records appear in the instant trial record. As well, evidence of some degree of mental retardation is not conclusive as to creating a reasonable doubt of mental competency. Persons v. State,339 So.2d 1092 (Ala.Cr.App. 1976).
The trial court had the opportunity to study any history of the appellant presented to it, as well as to actually observe the demeanor and conduct of the appellant. We find no abuse of the trial court's discretion in this ruling. Miles, supra. *Page 171 
As to the trial court's refusal to enforce the previous trial judge's order, committing appellant to the custody of Bryce Hospital, we find the trial court acted without error. The record indicates the appellant was released on bond on February 5, 1979. The order requiring that appellant be examined by the State hospital was signed on February 9, 1981. The first trial judge was without authority or jurisdiction to order the State hospital to receive appellant for examination when appellant was not held in confinement. Trice v. State, 53 Ala. 546
(1875); Hawes v. State, 48 Ala. App. 565, 266 So.2d 652 (1972); § 15-16-20, Ala. Code 1975.
 III
Appellant alleges he was denied due process of law by the State's utilizing peremptory strikes to strike all potential black jurors. There is no error in a prosecuting attorney's striking a jury on the basis of race. Carpenter v. State,404 So.2d 89 (Ala.Cr.App. 1980), cert. quashed, 404 So.2d 100 (Ala. 1981).
 IV
Appellant contends that the Alabama Juvenile Code is unconstitutional because it does not provide a right to treatment for juveniles. This matter was not raised in any manner at trial. As well, appellant was tried below as an adult and not as a juvenile.
Where the alleged unconstitutionality of an act is not properly raised below, this court will not consider that question on appeal. Frye, supra.
 V
Appellant alleges the indictment was erroneously read by the State to the jury in its opening statement. The opening statements of neither the State nor the appellant appear in the record. There is, therefore, nothing before this court to review. Henderson v. State, 373 So.2d 1218 (Ala.Cr.App.), cert.denied, 373 So.2d 1221 (Ala. 1979). Additionally, appellant is not entitled to the review of a matter for which no timely objection was made.
 VI
Appellant insists the State failed to prove a prima facie case of robbery because there was no evidence presented of "any money" having been stolen. The record does not factually support appellant's contention. Anthony Tillis, the State's eye-witness specifically testified that he saw appellant's accomplice remove money from the victim's clothing, after having shot him. As well, Mrs. Betty Campbell, bookkeeper for the Campbell Oil Co., testified the books indicated that the reading of the pumps at the time and scene of the robbery showed $227 was missing.
Appellant does contend, however, that the testimony of Anthony Tillis may not be considered because he was a co-conspirator in the crime. While appellant did not object to the testimony at trial nor move to exclude it after its admission, he did raise the issue in his motion for new trial. The evidence at trial, however, does not justify this contention. There was no testimony which indicated Tillis was involved in any manner in perpetrating the crime. When informed of the other two boys' intent to rob the station, Tillis refused to participate and merely observed the event from a removed distance.
The fact that a witness was present at the scene of a crime in itself is insufficient to render the witness an accomplice.Wilcox v. State, 401 So.2d 789 (Ala.Cr.App. 1980),401 So.2d 794 (Ala. 1981). Appellant did not establish at trial that Tillis, as an undisputed matter of fact, was an accomplice. Thus, a question of fact for the jury and not the trial judge was presented. Washington v. State, 401 So.2d 236
(Ala.Cr.App.), cert. denied, 401 So.2d 241 (Ala. 1981).
No error harmful to the substantial rights of appellant having been demonstrated, this case is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 172