Second degree murder; sentence: thirty years' imprisonment. Robbery; sentence: twenty years' imprisonment.
The essential facts of this case are stated in the companion case of William Robinson v. State, 428 So.2d 167 (Ala.Cr.App. 1982).
The sufficiency of the evidence is not raised as an issue.
 I
Appellant's initial convictions were overturned because of the trial court's failure to grant appellant's motion to exclude remarks made by the prosecutor which elicited evidence of prior irrelevant and unrelated misconduct not charged in the indictment. Terrell v. State, 397 So.2d 232 (Ala.Cr.App.),cert. denied, 397 So.2d 235 (Ala. 1981). Appellant alleges the Double Jeopardy Clause should have precluded his retrial subsequent to that reversal. He bases his argument on a line of cases involving "prosecutorial overreaching" in which defendants have been forced to successfully move for mistrials to avoid the potential jury prejudice created by intentional prosecutional misconduct. See Oregon v. Kennedy, 456 U.S. 667,102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), and cases therein cited.
Appellant seeks to link the reasoning of these cases to the facts of the instant case because the reversal of his first trial was necessitated by prosecutorial error. However, appellant's attempt to apply successful "mistrial" cases to the facts of the instant case falls short because appellant's motion for mistrial was not successful at the first trial.James Lewis Robinson v. State, 405 So.2d 1328 (Ala.Cr.App.),cert. denied, 405 So.2d 1334 (Ala. 1981). As well, this court in reversing appellant's initial convictions did not state appellant's motion for mistrial should have been granted, but *Page 658 
rather that appellant's motion to exclude the evidence should have been granted.
The Double Jeopardy Clause does not bar the retrial of a defendant who succeeds on appeal in getting his conviction set aside for trial error, except when the conviction is reversed on a failure of the sufficiency of the evidence to sustain the verdict. United States v. DiFrancesco, 449 U.S. 117,101 S.Ct. 426, 66 L.Ed.2d 328 (1980); 21 Am.Jur.2d Criminal Law § 309-314 (1981); James Lewis Robinson, supra at 1332.
Even assuming a case where mistrial was the proper remedy, in the absence of a successful motion for mistrial by appellant, the Double Jeopardy Clause presents no bar to the defendant's reprosecution.
 "If a mistrial were in fact warranted under the applicable law, of course, the defendant could in many instances successfully appeal a judgment of conviction on the same grounds that he urged a mistrial, and the Double Jeopardy Clause would present no bar to retrial." Oregon v. Kennedy, 456 U.S. 667, 676, 102 S.Ct. 2083, 2090, 72 L.Ed.2d 416, 425 (1982).
Appellant received the relief to which he was entitled in receiving a new trial upon reversal of his initial convictions. There was no Double Jeopardy Clause bar against that retrial.James Lewis Robinson, supra at 1333.
 II
Appellant alleges the Alabama Juvenile Code is unconstitutional because it does not provide a right to treatment to juveniles. This issue has been determined adversely to appellant in the companion case of WilliamRobinson, supra.
 III
Appellant asserts that the application of a law mandating a "one for one" jury strike system to the instant trial, which was enacted after the date of the commission of the crimes, but prior to the instant trial, constituted an ex post facto
application of that law. A "two for one" strike system was in effect at the time of appellant's first trial and was accordingly applied. However, the legislature subsequently amended the law to provide for a one for one jury strike system prior to appellant's second trial. Ala. Code § 12-16-100 (1975). The trial court applied the amended statute over appellant's objection.
Griggs v. State, 37 Ala. App. 605, 73 So.2d 382 (1954), sets forth the four tests to be applied in determining whether a law violates ex post facto provisions as follows:
 "`1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts greater punishment, than the law annexed to the crime when committed. 4th. Every law that alters the legal rules of evidence, and receives less or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.'"
In South v. State, 86 Ala. 617, 6 So. 52 (1889), the Alabama Supreme Court was faced with an analogous situation in which the number of peremptory strikes allowed a defendant was reduced by law from fifteen to eight, after the offense was committed. In upholding the application of the law reducing the number of strikes, this court stated the following:
 "Manifestly, laws of this class effect the remedy, — the procedure by which actions are maintained and defended and determined. They in no degree affect the right itself. As to crimes, their effect is in no sense to make an action criminal which was innocent when done, or to add to the criminality of an offense after its commission, or to increase the punishment, or to authorize a conviction on less or different testimony than that required when the crime was committed. Relating, as they do, to procedure, laws of this character may be modified at any time by the legislature, and as modified will apply *Page 659 
in all subsequent proceedings, with respect to offenses committed before as well as those committed after their adoption. `There is no such thing,' says Mr. Bishop, `as a vested right in any remedy.' Bish.St.Crimes, § 178. `So far as mere modes of procedure are concerned, a party has no more right in a criminal than in a civil action to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place.' Cooley, Const.Lim. 329. `The legislature has power at all times to increase or diminish the number of peremptory challenges to be allowed the state or the defendant in a criminal cause.' Thomp. M. Juries, § 165."
The jury striking process, being procedural in nature, rather than jurisdictional or substantive, is governed by the law in effect on the trial date. Aubrey Lee Robinson v. State,428 So.2d 148 (Ala.Cr.App. 1982). See also Haynes v. State,424 So.2d 669 (Ala.Cr.App. 1982).
Under the authority cited, we find that the trial court correctly applied the amended jury strike system at appellant's trial.
 IV
Appellant argues the trial court erred in failing to require the State to elect between the separate counts in the indictment which charged the separate crimes of murder and robbery. It has long been held that murder and robbery may properly be joined in the same indictment under separate counts, as being of the same family or general nature of offenses. William Robinson, supra. As in the companion case ofWilliam Robinson, appellant committed two separate and distinct criminal acts, the shooting and the robbery. It is legally possible to try and convict a defendant for multiple offenses at one trial where the indictment properly joins several offenses depending upon separate criminal acts or actions. See companion case of William Robinson, supra.
Although a defendant may timely move the court to compel an election when an attempt is made to convict an accused of two or more offenses growing out of the same transaction, such is not the case here. Where there is evidence of separate and distinct acts constituting separate criminal offenses, separate convictions and sentences may legally be had under multiple counts of an indictment. See companion case of WilliamRobinson, supra, which determined this issue adversely to appellant's contention.
 V
Appellant's contention that the State erroneously applied its peremptory challenges in a racially discriminatory manner so as to exclude all blacks has likewise been previously answered adversely to appellant in the companion case of WilliamRobinson, supra. There is no error inherent in a prosecuting attorney's striking a jury on the basis of race.
 VI
Appellant contends the in-court identification made of appellant by State's witness Teresa Silvey should have been suppressed. He argues Ms. Silvey's identification resulted from her observation of photographs taken during an allegedly illegal detention, rather than from the witness's prior independent observation of appellant. No motion to suppress or exclude this testimony appears in the record. However, the following appears in the record after appellant's voir dire of Ms. Silvey:
 "MR. ALLENSTEIN: Yes. My point is that all of this was suggestive and illegal, and that her present identification —
 "THE COURT: I understood all along what your position was, but I —
"MR. ALLENSTEIN: I want to be sure it —
"THE COURT: — I don't agree with you.
"MR. ALLENSTEIN: Okay.
"THE COURT: Okay, is that all?
"MR. ALLENSTEIN: That's all."
The record before us does not clearly indicate the reason or circumstances for *Page 660 
appellant's detention at the time the photographs were made. Even assuming an illegal arrest, however, we find no reversible error. The record is clear to the point that witness Silvey's identification of appellant resulted, not from her observation of the photograph taken of appellant during his detention, but rather from her observation and recognition of him on the day the homicide occurred. United States v. Crews, 445 U.S. 463,100 S.Ct. 1244, 63 L.Ed.2d 537 (1980).
Ms. Silvey did not witness the homicide, which occurred about a block from her house, but rather observed two black youths running through her yard, looking back as they ran, on that afternoon. Her suspicions were aroused by the boys' actions and the fact that they were not wearing shirts, even though it was December. Only after calling the police to report the boys' behavior did Ms. Silvey learn of the homicide. Ms. Silvey stated she recognized appellant by face that day, but not by name, because she had observed him in her neighborhood on several occasions previously. Ms. Silvey stated she was one of a few white residents in a predominantly black neighborhood.
Crews, supra, upon which appellant relies, makes it clear that under the circumstances of this case there was no constitutional prohibition against the introduction of Ms. Silvey's in-court identification of appellant. Although the discussion in Crews deals with a victim's identification of the defendant, it is equally applicable to that of an uninvolved witness.
As in Crews, Ms. Silvey's presence in the courtroom was not the product of police misconduct. Ms. Silvey contacted the police concerning her observation of appellant, whom she had recognized, prior to even learning of the commission of the crime. Ms. Silvey's identity and knowledge of the events were known to the police prior to the alleged illegal arrest of appellant.
Again, as in Crews, the record does not reflect that the assumed illegal arrest of appellant in any way affected Ms. Silvey's ability to accurately identify appellant, based upon her initial observation of him the day of the crime. There is no question but that Ms. Silvey recognized appellant's face as a face known to her on the day of the crime, prior to ever viewing the photograph of appellant made during his detention. Not until the day following her call to the police was Ms. Silvey shown the appellant's photograph. As the court stated inCrews, an illegal arrest, without more, has never been viewed as a bar to a subsequent prosecution, nor as a defense to an otherwise valid conviction. And we view the majority of the court in Crews as having foreclosed the contention that appellant's face itself could have been suppressed as a "fruit" of any illegal police conduct.
Ms. Silvey's presence at trial, recollection and identification of appellant were untainted by any assumed prior illegal conduct of the police in detaining and photographing appellant. The witness's identification testimony in the case was simply not the product of appellant's arrest. Crews, supra.
No error harmful to the substantial rights of appellant having been demonstrated, this case is affirmed.
AFFIRMED.
All the Judges concur.