TYSON, Judge.
Robert Earl Ray, Jr., was indicted under separate indictments for the robbery of one William “Chip” Turner, in violation of § 13A-8-41, Code of Alabama 1975, and for the murder of one Robert Lili while committing, attempting to commit, or in the immediate flight from the commission of a robbery, by pushing Lili off of a bridge or causing Lili to jump off a bridge, in violation of § 13A-6-2(a)(3). These causes were consolidated for trial and the jury found the appellant “guilty as charged” in each indictment. The trial judge sentenced the appellant to 15 years in the penitentiary for robbery, and 18 years in the penitentiary for murder, such sentences to be served consecutively.
The appellant now appeals the convictions of the trial court and further appeals *525 the trial court’s correction of its juvenile transfer order. These causes were consolidated for purposes of this appeal.
The appellant does not challenge the weight and sufficiency of the evidence, thus only a brief statement of the facts elicited at trial is necessary.
On the night of May 22, 1981, William “Chip” Turner and his cousin, Robert Lili, went to a party at one Lynn Sweatt’s residence. Turner and Lili drove to the party in Turner’s mother’s automobile — a two door Honda Accord. Robert Earl Ray, Jr., and his companion, Ken Sanford, were present at the Sweatt residence. At approximately 11:15 p.m., Turner and Lili decided to leave the party and went outside to get in Turner’s car. Sanford and Ray were also in the process of leaving the party. Ken Sanford demanded that Turner and Lili give him a ride home and forced his way into the back seat of Turner’s automobile on the driver’s side. Ray then climbed into the back seat on the passenger side. Turner and Lili could not make Sanford and Ray get out of the car, so they proceeded on their way with Lili driving the car. A short time later, Sanford (who was sitting in the back seat on the driver’s side) told Lili to pull over into an alley and let him out. As Lili exited the car to let Sanford get out of the back seat, Sanford grabbed him and threw him into the back seat with Ray. Sanford then took control of the car, pulled a straight-razor, and put his arm around Turner’s neck. Sanford placed the razor against Turner’s throat and stated that he would kill both Turner and Lili if they “did anything stupid.” (R. 121).
Sanford began to drive the car while keeping the razor against Turner’s throat. He threatened to kill Turner and Lili several times and each time Ray would say, “Don’t kill them yet.” (R. 121). Sanford then told Turner and Lili to give all their money to Ray. Turner gave Ray eight dollars but Ray did not believe that was all the money which Turner had and ordered Turner to give Ray his wallet, which Turner did. Ray then saw a buck knife on the dash board of the car and ordered Turner to give it to him.
After driving around a while longer they stopped at a gas station. Ray got out of the car, put some gas in the car, and re-entered the vehicle. As Sanford began to drive away from the station, Turner decided to try to escape. Turner pushed the razor away from his throat, cutting his thumb in the process, and opened the door of the car. At this time Ray reached around from the back seat, placed the buck knife to Turner’s throat and told Turner he would kill him. (R. 125). Sanford continued driving the car and approximately thirty minutes later stopped the car on a rural road and ordered Turner to get out of the vehicle. As Turner was exiting the vehicle, someone pushed him and cut his throat. Turner fell to the ground, and Sanford drove the car away. Robert Lili was still in the vehicle with Sanford and Ray at this time.
Turner went to a nearby residence, told one Mr. Robert Jones, the owner of the home, about the incident, and the Sheriff’s department was contacted. The Sheriff arrived at the Jones’ residence, and a short time later took Turner to identify his car, which had been found wrecked and upside down in the same general area.
Mr. Jones testified that Turner had arrived at his home at approximately 1:00 a.m. on the morning of May 23, 1981. Mr. Jones had been told of the ordeal and further overheard the details of this incident as related by Turner to the Sheriff.
At approximately 3:00 a.m. on the same morning, Sanford and Ray came to the Jones’ back door. Jones told his wife to call the Sheriff and invited Sanford and Ray into his home. Sanford and Ray told Jones that they had been kidnapped, robbed and kicked out of their car by two colored boys (R. 284). A short time later a deputy sheriff came to the Jones’ residence and arrested Sanford and Ray.
Later that morning sheriff’s deputies found a straight razor behind Mr. Jones’ home (R. 294, 324).
*526 Deputy Charles Richardson testified that he found the buck knife inside the wrecked car. He found a class ring with the initials R.C.L. lying on the road approximately 30 feet away from the ear. He located the wallets of both Turner and Lili on another road in the same general area.
At approximately 7:00 a.m. on May 23, 1981, the officers located the body of Robert Lili beneath the bridge over the Cahaba River in the vicinity of the wrecked car. The water beneath the bridge was shallow and filled with stones. The cause of Lill’s death was determined to be massive head trauma caused by the victim’s head hitting a stationary object with great force. Dr. Linda Norton further testified that simply striking the water from such a height as the bridge could have caused the massive head trauma and resulting death.
The clothing of both Sanford and Ray was examined for blood stains. Blood stains found on the rear pocket of Robert Ray’s shorts were consistent with the shape of the razor used in the incident. Further, the blood stains found on Ray’s shorts matched the blood found on the razor, which was that of “Chip” Turner.
I
Appellant argues that the trial court erred in failing to enforce a written plea bargain agreement between the State and the appellant.
The trial court held a hearing on this matter before trial of the case. The record establishes that a written agreement was in fact entered and reduced to writing. It is obvious from the testimony elicited at the hearing that the State did not know the amount of the defendant’s involvement in the crime prior to entering the agreement. It is equally clear that defense counsel did know and kept this from the State. Defense counsel refused to allow the State to talk with the defendant unless a written agreement was entered. At the time of the agreement, the State wanted the defendant to testify against his co-defendant, whom the State believed to be the one involved most heavily in the commission of the offense. After entering into a plea agreement with the appellant, the State was allowed to talk to him. Appellant then informed the State that he and not his co-defendant had pushed or caused Robert Lili to jump to his death from the bridge. The State then realized that appellant’s testimony would be of little benefit to them in prosecution of his co-defendant and informed defense counsel that the deal was off.
It appears from a reading of the transcript that the defense perpetrated some type of fraud against the State in order to procure the plea agreement. The State, upon finding out the true nature of appellant’s involvement, refused to honor this agreement. Upon hearing all of the testimony presented concerning the plea agreement, the trial judge decided that the State had good reason not to honor the agreement and refused to enforce it.
It should be noted that all that a defendant bargains for is to have his negotiated plea agreement presented to the trial judge for consideration. It is then the province of the trial judge to accept or deny the terms of the agreement. Pursuant to the mandates of Ex parte Yarber, 437 So.2d 1330 (Ala.1983) and Ex parte State, 455 So.2d 896 (Ala.1984), the trial judge will not be held in error for his decision under the circumstances of this case.
II
Appellant argues that the trial court improperly sentenced him to cumulative sentences for the crimes charged since they arose out of the same transaction or occurrence. Appellant was indicted in separate indictments for robbery and murder. He was charged with the robbery of one William Turner and with the felony-murder of one Robert Lili. He was tried and convicted in a single trial of both offenses. The trial court sentenced the appellant to 15 years’ imprisonment for robbery and 18 years’ imprisonment for the murder and further ordered that such sentences run *527 consecutively. The appellant argues that such constitutes double jeopardy.
The test to be used has been stated as follows:
“The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.”
Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). The application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes. See Iannelli v. United States, 420 U.S. 770, 785, 95 S.Ct. 1284, 1293, 43 L.Ed.2d 616 (1975); Brown v. State, 367 So.2d 557 (Ala.Cr.App.1978), cert. denied, 367 So.2d 559 (Ala.1979).
“In Colston v. State, 350 So.2d 334, 335 (Ala.Cr.App.1976), rev’d, 350 So.2d 337 (Ala.1977), in reversing the appellant’s murder conviction, which arose from the same facts upon which he had already been convicted for robbery, this court relied on Wildman v. State, 42 Ala.App. 357, 165 So.2d 396 (1963), cert. denied, 276 Ala. 708, 165 So.2d 403 (1964), and Title 15, § 287, Code of Alabama 1940 (which was carried forward unchanged to our present statute, § 15-3-8), to hold:
“ ‘The proof in the trial of Colston for robbery and the instant proof shows that the robbery and homicide were blended in the act and each offense was an incident of the other. The homicide was an act of violence as charged in the indictment for robbery, an incident to the robbery, and part ’ thereof.’
The Alabama Supreme Court, in reversing this court on the above quoted point, stated that this court had misinterpreted Title 15, § 287, and held that Col-ston had committed two ‘separate and distinct crimes which ‘clearly constituted two criminal offenses.’ 350 So.2d at 339. The court quoting from Racine v. State, 291 Ala. 684, 687, 286 So.2d 896, 898 (1973), stated:
“ ‘ “A plea of former jeopardy is unavailing unless the offense presently charged is precisely the same in law and on fact as the former one relied on under the plea. And this is true even if both cases are founded on the same facts but the crimes charged were not the same in law.” ’ 350 So.2d at 339.”
Jackson v. State, [Ms. 6 Div. 767, April 9, 1985] (Ala.Cr.App.1985). See also Clift v. State, 352 So.2d 838 (Ala.1977), cert. denied, 435 U.S. 909, 98 S.Ct. 1459, 55 L.Ed.2d 500 (1978); Brown v. State, supra.
In the present case the appellant was charged with the robbery of one William Turner pursuant to § 13A-8-41, Code of Alabama 1975, and the murder of one Robert Lili, pursuant to § 13A-6-2(a)(3), Code of Alabama 1975 (felony murder). The underlying felony used for the murder indictment of appellant was robbery. If in fact the robbery of Turner was the underlying felony used to prove the murder of Robert Lili — which arose out of the same transaction or occurrence as appellant argues — appellant would have a valid argument. However, in this case we have two separate robberies. The State proved the robbery of Turner through the testimony of Turner and other witnesses. The evidence elicited during trial further establishes that Robert Lili was robbed at some time prior to Lill’s being pushed off of or forced off the bridge by Ray. Jefferson County Sheriff’s Deputy Charlie Richardson testified that he served as the evidence technician in investigating the case at bar.
In the early morning hours of May 23, 1981, he went to an area on Sicard Hollow Road where Mr. Turner’s car had been located. He stated that the car had been wrecked. While processing the scene of the wrecked car, Richardson found a class ring bearing the initials R.C.L. inside it located in the road approximately 25 to 30 *528 feet away from the vehicle. (R. 329) Richardson testified that on May 24, 1981, he went to Grant’s Mill Road in the area between Overton Road and Grant’s Wood Road. When he arrived, other police officers were on the scene. He stated that he located two wallets on the side of Grant’s Mill Road. He examined these wallets and discovered identification in each one. One wallet contained identification for “Chip” Turner and the other wallet contained identification for Robert Lili. Richardson took these wallets into his custody and sealed them in evidence envelopes. (R. 344-346)
In this cause, each offense with which the appellant was charged required proof of an element that the other did not, even though the offenses originated out of the same transaction or occurrence. There are two separate robberies, thus negating any possible double jeopardy issue involving the felony — murder indictment based on the underlying felony of robbery. Applying the test enunciated in Blockburger, we must conclude that the appellant was properly indicted and convicted for two separate and distinct offenses “notwithstanding a substantial overlap in the proof offered to establish the crimes.” See Iannelli v. United States, 420 U.S. at 785, 95 S.Ct. at 1293. We further find that where, as here, the test of Blockburger has been met and the appellant’s acts of murder and robbery constitute two separate and distinct acts, the double jeopardy clause does not prohibit separate sentences to be served consecutively. See Clift v. State, supra; Brown v. State, supra; Robinson v. State, 428 So.2d 167 (Ala.Cr.App.1982); Terrell v. State, 429 So.2d 656 (Ala.Cr.App.1982).
Ill
Appellant’s final contention is that the trial court erred in failing to hold a new juvenile transfer hearing. The trial judge was ordered pursuant to Ray v. State, 435 So.2d 53 (Ala.1983), to “correct its transfer order to reflect whether consideration was given to all requirements of § 12-15-34(d), Code of Alabama 1975.” Ray v. State, supra at 54. It appears from the record that the trial court complied with the mandate of the Alabama Supreme Court in this matter. He corrected his order to reflect that he had in fact considered the factors set out in § 12-15-34(d), in making his determination on the motion to transfer.
The order now appears to be in accord with the statute, and as such, we can now make a determination that all requirements have been met in this matter. A review of the transcript indicates that such order is valid. See Mayne v. State, 416 So.2d 741 (Ala.1982); Bragg v. State, 416 So.2d 715 (Ala.1982); Gulledge v. State, 419 So.2d 219 (Ala.1982).
After careful consideration of all issues raised by appellant in this cause, and a review of this record, the judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.