On August 14, 1973, the appellant, Michael R. Pardue, was convicted of murder in the first degree. He was sentenced to life imprisonment. After the United States District Court for the Southern District of Alabama granted the appellant habeas corpus relief, on November 30, 1992, counsel was appointed for the appellant and the appellant was granted an out-of-time appeal. On November 30, 1992, counsel was appointed to represent the appellant on appeal.
In the early morning hours of May 22, 1973, the body of Ronald Rider was found on the floor at Thoni's gasoline service station in Baldwin County, Alabama. Mr. Rider had been shot in the head by a .410 shotgun and died as a result of the wounds he suffered. The appellant, who was 17 years old at the time of the shooting, was arrested and was taken to the Saraland Police Department.
Robert Stewart, chief investigator for the Baldwin County Sheriff's Department, took the appellant's statement from the appellant on May 23, 1973. Stewart testified that prior to taking the appellant's statement, he read the appellant hisMiranda rights and the appellant signed a waiver form. Stewart further testified that no inducements were offered to the appellant to get him to give a statement. Two other police officials were present when the appellant made his statement regarding Mr. Rider's death.
According to Officer Stewart, the appellant told him that on May 22, 1973, the appellant and Theresa Lanier met at a motel in Mobile. The appellant told Stewart that they left the motel in a stolen pick-up truck and went to Baldwin County, where they met John Brown. The appellant told Stewart that he had a .410 shotgun with him. In his statement, the appellant stated that they drove to Thoni's gasoline service station and Brown pretended that the truck was overheated. He stated that they then entered the station and that he held the gun on Mr. Rider. The appellant stated that Brown removed money and car keys from Mr. Rider's pockets. The appellant told Stewart that Brown left the station to get a crowbar so that Mr. Rider could pry open the safe, which was locked. According to Stewart, the appellant stated that while Mr. Rider had the crowbar in his hand, he turned around and threw the crowbar at the appellant. The appellant told Stewart that, as a result, he shot Mr. Rider.
Theresa Lanier testified that the appellant did not shoot Mr. Rider. She testified that before the shooting, the appellant handed Brown the gun and told Brown to watch Rider. Lanier stated that she was going outside to look at Mr. Rider's car. At that time, it appeared as if Mr. Rider was going to hit Brown with the crowbar, and, as he did, the gun went off.
William T. Travis, chief investigator for the Mobile County Sheriff's Department, testified that he had known the appellant for several months. According to Travis, "90% of the time," the appellant was intelligent, courteous, and well-mannered. Travis said that when the appellant talked about the crime, he expressed no emotion.
The defense presented the testimony of the appellant's aunt, Jose Kinnard. Kinnard testified that the appellant's mother had been shot by his father and that his mother died from the wound in the appellant's arm when the appellant was 14 years old. After the death of his mother, the appellant would sometimes act strange. Sometimes, the appellant would be talking or acting normal and then, all of a sudden, the appellant would black out and not remember the subject of the conversation. She stated that the appellant was insane "on and off." At arraignment, the appellant pleaded not guilty or not guilty by reason of insanity.
 I
The appellant first argues that his statement to Officer Stewart should have been excluded because, he says, it was obtained in violation of his Miranda rights. Specifically, the appellant argues that he was in custody for almost 30 hours and was questioned before he was read his Miranda rights. The record reflects that the appellant was in custody for almost 30 hours before he gave his statement to Stewart. However, the record does not reflect that the appellant was being questioned with regard to the murder before talking to Stewart. *Page 266 
The appellant correctly asserts that a confession is prima facie involuntary and inadmissible, and the burden is upon the State to establish voluntariness and a Miranda predicate for the confession to be admissible. Jackson v. State,562 So.2d 1373 (Ala.Crim.App. 1990). A two-part test is used to determine whether an accused's statement is admissible. First, the trial court must determine whether the accused was informed of his Miranda rights, and second, the trial court must determine whether the accused has voluntarily and knowingly waived his Miranda rights in making his statement. Holder v.State, 584 So.2d 872 (Ala.Crim.App. 1991); Carpenter v.State, 581 So.2d 1277 (Ala.Crim.App. 1991). Here, Officer Stewart testified that the appellant was read his Miranda
rights. Thus, the evidence reflects the first part of the test was met.
Whether the accused voluntarily and knowingly waived hisMiranda rights is determined by the totality of the circumstances of each case. Menefee v. State, 592 So.2d 642
(Ala.Crim.App. 1991); Lawhorn v. State, 581 So.2d 1159
(Ala.Crim.App. 1990), aff'd, 581 So.2d 1179 (Ala. 1991), cert.denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). In this case, the unrefuted evidence shows that the officers read a waiver of rights form to the appellant, that the appellant indicated that he understood his rights and the contents of the waiver form, and that the appellant signed the waiver of rights before he gave his statement. A trial court's determination that an accused's statement was voluntary will not be disturbed on appeal unless the determination is contrary to the great weight of the evidence. Woods v. State, 592 So.2d 631, 634
(Ala.Crim.App.), writ quashed, 592 So.2d 636 (Ala. 1991). In this case, based upon the evidence presented by the state, we hold that the trial court did not abuse its discretion because the evidence establishes that the statement was made voluntarily after the appellant had been informed of hisMiranda rights.
 II
The appellant also contends that the taking of his statement violated Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758,12 L.Ed.2d 977 (1964), because, he says, he was not permitted to speak with an attorney before giving the statement. We disagree.
The facts adduced at trial tend to establish that while the appellant was in custody, David Barnette, an attorney who did not represent the appellant at trial, arrived at the police station and told the police that he represented the appellant. However, the appellant's family said that they had not hired Barnette at the time, and the appellant told the investigator that he "did not know how Barnette got into the case." Regardless, the appellant never requested to speak to an attorney.
In Escobedo, the Supreme Court held that when a suspect is subjected to in-custody interrogation and the accused has been denied counsel after requesting counsel, no statement elicited by the police during the interrogation may be used against him at trial. 378 U.S. at 491, 84 S.Ct. at 1765. However, in this case, although an attorney claiming to represent the appellant came to the police station and offered his services, the appellant never invoked his right to confer with counsel.
An accused need not be informed of his attorney's presence at the place where he is being interrogated when he does not ask to speak to his attorney. See Moran v. Burbine, 475 U.S. 412,106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). See also Aultman v.State, 621 So.2d 353 (Ala.Crim.App. 1992); Gilchrist v.State, 585 So.2d 165 (Ala.Crim.App. 1991). Additionally, this principle applies to juveniles who do not request to speak to their parents. O.M. v. State, 595 So.2d 514 (Ala.Crim.App. 1991), writ quashed, 595 So.2d 528 (Ala. 1992). Therefore, because the appellant never invoked his right to confer with counsel, the statement was not obtained in violation ofEscobedo and the trial court properly allowed testimony regarding the statement.
 III
The appellant next argues that there was a fatal variance between the indictment and the proof at trial and the trial court's oral charge. The appellant's counsel failed *Page 267 
to object to the trial court's oral charge. This issue has not been preserved for our review. As the State correctly argues, in Daniels v. State, 523 So.2d 517, 518 (Ala.Crim.App. 1987), this Court held that when a variance between the indictment and proof is not argued to the trial court in any way, any purported defect in the indictment is waived.
 IV
The appellant further argues that the trial court erred in denying his request for a psychiatric examination. § 15-16-22, Code of Alabama 1975, formerly Title 15 § 425, Code of Alabama 1940 (Recompiled 1958).
The appellant acknowledges that the determination as to whether an accused should be afforded a mental examination is discretionary with the trial court. Case law construing §15-16-22 establishes that the accused does not have an automatic right to a mental examination. Robinson v. State,428 So.2d 167, 170 (Ala.Crim.App. 1982). The accused has the burden of establishing that a reasonable doubt exists as to the accused's mental competency. Id. (citing Miles v. State,408 So.2d 158 (Ala.Crim.App. 1981), cert. denied, 408 So.2d 163
(Ala. 1982)). On review, this Court is to determine whether the trial court abused its discretion in denying a request for a mental examination. Id. (citing, Beauregard v.State, 372 So.2d 37 (Ala.Crim.App. 1979), cert. denied,372 So.2d 44 (Ala. 1979).
In this case, although we have no record of the hearing on the appellant's motion for a mental examination, we cannot hold that the trial court abused its discretion in denying the motion. The appellant attempted to elicit testimony at the trial from its own witness and from prosecution witnesses that he was mentally incompetent. Nonetheless, the evidence tended to establish that the appellant, most of the time, was courteous and intelligent and that he behaved normally. The only witness to testify otherwise was the appellant's aunt, who stated that the appellant was insane "on and off" because it appeared that the appellant would forget conversations and would not take the advice of adults. We are not inclined to believe that this evidence creates a reasonable doubt as to the appellant's competency to such an extent as to require us to hold that the trial court abused its discretion.
 V
The appellant argues that the trial court committed reversible error by failing to inform him sua sponte, of his rights under the Youthful Offender Act. The appellant, at the time of the trial, was 17 years old. The trial court must inform a youthful offender of the benefits available under the Youthful Offender Act. Ex parte Petty, 548 So.2d 636 (Ala. 1989). However, the requirement that the trial court inform a youthful offender of the benefits available under the Youthful Offender Act may be waived by a failure to object. Hobbie v.State, 564 So.2d 97, 98 (Ala.Crim.App. 1990), overruled onother grounds, State v. Hobbie, 596 So.2d 613 (Ala.Crim.App. 1991).
While there is nothing in the record to suggest that the trial court informed the appellant of the benefits of the Youthful Offender Act, there is no showing that the appellant ever raised this omission to the trial court as error or that he objected to being denied youthful offender status. Therefore, we will not reverse on this issue.
 VI
Last, the appellant argues that his trial counsel was ineffective and that he is entitled to a reversal as a result. Specifically, the appellant argues that the failure of his trial counsel to inform him of the Youthful Offender Act, to object to the alleged fatal variance between the proof and the trial court's oral charges, and the brevity of the trial all establish his counsel's ineffectiveness. Nevertheless, the issue of ineffective assistance of counsel has not been preserved for our review. In Ex parte Jackson, 598 So.2d 895,897 (Ala. 1992), the Alabama Supreme Court held that newly appointed appellate counsel must file a motion within 14 days of appointment requesting that the time within which to file a motion for a new trial be suspended until the reporter's transcript is prepared and filed. In this case, no such *Page 268 
action was taken by appellate counsel. A motion for a new trial was not timely filed, and the appellant's contention that he received ineffective assistance of counsel was not presented to the trial court. A claim of ineffective assistance of counsel cannot be considered for the first time on appeal.Jackson, 598 So.2d at 897.
The appellant argues that because this out-of-time appeal is from a trial that took place approximately 20 years ago, we should not apply Jackson. However, Jackson is the procedure set forth by the Alabama Supreme Court to allow the preservation of ineffective assistance of counsel claims and we will not ignore the requirements that the Alabama Supreme Court has held must be met.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.