The appellant, Eddie Wayne Grider, was convicted of second-degree assault, a violation of § 13A-6-21, Ala. Code 1975. He was sentenced as a habitual felony offender to 32 years' imprisonment.
 I.
The appellant contends that the trial court erred in denying his motion for a court-ordered mental examination. Specifically, he argues that because of his mental problems he was unable to effectively participate in his defense at trial.
According to Rule 11.2(a)(1), Ala.R.Crim.P., the defense may petition the circuit court for "an examination to assist in the determination of the defendant's present mental condition and competency to stand trial." The Committee Comments *Page 191 
to Rule 11.2 state, in pertinent part, the following:
 "Ordering an examination pursuant to this rule shall not be viewed as a perfunctory or ministerial act, but rather as a discretionary one, that should be exercised only if the circuit court has reasonable cause to believe the defendant may not be mentally competent. In exercising judicial discretion, the circuit court is authorized to deny the motion if there is no reasonable basis shown for questioning or examining the defendant's competency."
"`Common sense, as well as sound legal authority, dictates that the trial judge not grant a psychiatric examination at state expense unless there is some reason to believe the accused was incompetent or insane.'" Wisdom v. State, 515 So.2d 730, 733
(Ala.Cr.App. 1987), quoting Bailey v. State, 421 So.2d 1364, 1367
(Ala.Cr.App. 1982).
 "`A defendant does not have a right to a mental examination whenever he requests one. Rather, this is a matter within the discretion of the trial judge, with the defendant bearing the burden on a motion for a competency investigation of persuading the court that a reasonable and bona fide doubt exists as to the defendant's mental competency.' Robinson v. State, 428 So.2d 167, 170 (Ala.Cr.App. 1982)."
Allen v. State, 539 So.2d 1124, 1126 (Ala.Cr.App. 1988).
In Thomas v. State, 766 So.2d 861 (Ala.Cr.App. 1998), this Court stated:
 "Thomas simply assumes that evidence of mental problems automatically indicates incompetency. However, the law is clear that `[p]roof of the incompetency of an accused to stand trial involves more than simply showing that the accused has mental problems or psychological difficulties.' Bailey v. State, 421 So.2d 1364, 1366 (Ala.Cr.App. 1982).
 "`"A distinction must be made between mental illness and mental incompetency to stand trial, and the fact that a defendant is mentally ill does not necessarily mean that he is legally incompetent to stand trial. Thus, not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence of defendant's mental unfitness must indicate a present inability to assist counsel or understand the charges."'
 "Cowan v. State, 579 So.2d 13, 15
(Ala.Cr.App. 1990) (quoting 22A C.J.S. Criminal Law § 550 (1989) (footnotes omitted))."
766 So.2d at 881.
The trial court's order denying the motion for a court-ordered mental examination stated, in pertinent part:
 "This case came on for hearing on the defendant's motion for a mental examination to determine defendant's present mental condition and competency to stand trial. The defendant was present with his attorney, Finis Royal. The state was represented by the District Attorney, Charles Rhodes.
 "In support of his motion, the defendant submitted reports prepared in 1997 for use in the connection with his request for Social Security disability benefits and a handwritten doctor's excuse for his absence from the original trial date of December 3, 1998. No testimony was presented in open court.
 "The test for evaluating the defendant's competency to stand trial is whether the defendant has `sufficient present ability to consult with his attorney with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceeding against him.' Ex parte Gordon, 556 So.2d 363 (Ala. 1988).
 "The defendant's burden for purposes of his motion is to establish a reasonable doubt as to his competency to stand trial. Russell v. State, 715 So.2d 866 (Ala.Cr.App. 1997). *Page 192 
 "The court has carefully considered the evidence submitted and observations of the defendant. The court finds that the defendant has failed to submit the records of the physician [who] treated him in December, 1998, or the specialists to [whom] he was referred as indicated in the physician's handwritten court excuse.
 "Upon consideration of this matter, it is ORDERED, ADJUDGED AND DECREED that the defendant's motion for mental examination be, and it is hereby, denied."
(C. 48-49.)
During the hearing, reports indicating the appellant's psychological state when he applied for Social Security disability benefits in 1997 were submitted to the trial court. Our review of the record indicates that, after reviewing the psychological reports, the Social Security Administration determined that the appellant suffered from various mental disorders and that because of those mental disabilities he was entitled to disability insurance benefits. (C. 44.) One of the psychological reports indicated that, although the appellant did not possess sufficient judgment to make acceptable decisions in an employment setting, he was cooperative, his "stream of talk and mental activity were normal," and his "response to questions was adequate and relevant." (C. 37.)
Here, the appellant produced no evidence that a mental illness rendered him legally incompetent to assist in his defense or to understand the nature of the charges against him.[1]
Furthermore, the trial court was able to observe the appellant's behavior during the motion hearing. Thus, the trial court did not err in determining that there was no reasonable basis shown for questioning or examining the defendant's competency.
 II.
The appellant contends that the trial judge erred in not recusing herself from the sentencing proceedings.
Canon 3C.(1)(a), Canons of Judicial Ethics, provides:
 "A judge should disqualify himself in a proceeding in which his disqualification is required by law or his impartiality might reasonably be questioned, including but not limited to instances where:
 "(a) He has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ."
In Humphries v. Lynch, 579 So.2d 612 (Ala. 1991), the Alabama Supreme Court stated:
 "In order for the probate judge to have erred in failing to recuse himself, he must have abused his discretion. Recusal is required under Canon 3 C(1), Alabama Canons of Judicial Ethics, when the facts are such that it is reasonable for a party, for members of the public, or for counsel to question the impartiality of the trial judge, but recusal is not required by mere accusations without proof of supporting facts. Bryars v. Bryars, 485 So.2d 1187 (Ala.Civ.App. 1986) [citations omitted]. The test under that canon is: `"Would a person of ordinary prudence in the judge's position knowing all of the facts *Page 193 
known to the judge find that there is a reasonable basis for questioning the judge's impartiality?"' Bryars
at 1189; Matter of Sheffield, 465 So.2d 350
(Ala. 1984)."
579 So.2d at 616.
Additionally, in Ex parte Cotton, 638 So.2d 870, 872
(Ala.Cr.App. 1994), the Alabama Supreme Court stated:
 "The burden of proof is on the party seeking recusal. Prejudice on the part of a judge is not presumed. `"[T]he law will not suppose a possibility of bias or favor in a judge who is already sworn to administer impartial justice and whose authority greatly depends upon that presumption and idea."' Ex parte Balogun, 516 So.2d 606, 609 (Ala. 1987), quoting Fulton v. Longshore, 156 Ala. 611, 46 So. 989 (1908)."
In this case, before the sentencing hearing, the defense made a motion for the judge to recuse herself. In that motion, the appellant claimed that he had recently discovered that the judge had represented him in two assault cases when she was engaged in private practice, and that the judge had also represented opposing parties who had filed claims against him in a civil case. The trial judge stated that she did not recall dealing with any cases involving the appellant while she was in private practice. The trial court denied the motion and sentenced the appellant.
During the hearing on the motion for a new trial, the defense introduced court records that indicated that the trial judge had represented the appellant in two separate assault cases. The order of the trial court denying the motion for a new trial stated, in pertinent part:
 "The defendant argues that the court should have recused from the case after notification by the defendant at the sentencing hearing that the court, during private practice, was attorney for the defendant on a prior case and was attorney for a party with whom the defendant had an opposing interest in a child-custody case. The defendant cites no grounds or rule of law requiring recusal of the court. The court has reviewed the case files numbered CC-92-334 and -335. The court has no independent recollection of representing the defendant in 1992 nor knowledge of the defendant's opposing interest in any custody case tried by the court [sic]. Upon review of the 1992 files, the court acknowledges that during private practice, the court was appointed to represent the defendant in two assault cases. The files reflect that a written waiver of arraignment and plea of not guilty was filed and soon thereafter the cases were dismissed against the defendant on his plea of guilty in an unrelated case wherein defendant was represented by retained counsel, W.N. Watson. The court has no personal bias or prejudice for or against the defendant or personal knowledge of disputed evidentiary facts concerning this case. The defendant's motion for new trial on the grounds that the court erred in failing to recuse from the case at the time of the sentencing hearing is denied."
(C. 79-80.) (Emphasis in original.)
The trial judge did not abuse her discretion in denying the motion to recuse and the motion for a new trial. The trial judge stated that she had no recollection of representing the appellant and no knowledge of his opposing interests in any civil cases. Moreover, our review of the record indicates that the facts surrounding the previous cases were separate from the facts in the instant case. Thus, a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find that there is no reasonable basis for questioning the judge's impartiality.
 III.
The appellant contends that the state failed to establish a prima facie case of second-degree assault. Specifically, he argues that there was insufficient evidence *Page 194 
that a deadly weapon or dangerous instrument was used in the assault.
In deciding whether the state presented sufficient evidence to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. Bayhi v. State,629 So.2d 782, 788 (Ala.Cr.App. 1993). We must accept as true evidence introduced by the prosecution, make all legitimate inferences from that evidence, and consider that evidence in the light most favorable to the prosecution. McKinney v. State,654 So.2d 95, 99 (Ala.Cr.App. 1995); Johnson v. State, 623 So.2d 444,447 (Ala.Cr.App. 1993). It is not the province of this Court to reweigh the evidence. Council v. State, 682 So.2d 495, 497
(Ala.Cr.App.), cert. denied, 682 So.2d 500 (Ala. 1996); Black v.State, 680 So.2d 942, 944 (Ala.Cr.App. 1995). "Conflicting evidence presents a jury issue." Curry v. State, 601 So.2d 157,159 (Ala.Cr.App. 1992), citing Smith v. State, 583 So.2d 990
(Ala.Cr.App.), cert. denied, 583 So.2d 993 (Ala. 1991). This Court will not substitute its judgment for that of the jury as to the sufficiency of the evidence to sustain a conviction. Brandonv. State, 542 So.2d 1316, 1319 (Ala.Cr.App. 1989). "[C]ircumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused."Stephens v. State, 580 So.2d 11, 24 (Ala.Cr.App. 1990), aff'd,580 So.2d 26 (Ala.), cert. denied, 502 U.S. 859, 112 S.Ct. 176,116 L.Ed.2d 138 (1991).
The indictment in case number CC-98-659, charged the following:
 "The Grand Jury of Said County charge that before the finding of this indictment, Eddie Wayne Grider, whose name to the Grand Jury is otherwise unknown than as stated, did, with intent to cause physical injury to another person, cause physical injury to Cynthia G. Blevins, by means of a deadly weapon or dangerous instrument, to-wit: a shoe, in violation of Section 13A-6-21(a)(2) of the Code of Alabama, subsequent to the passage of said Section 13A of the Code of Alabama."
(C. 1.)
By definition, a shoe — in this case a sandal — is not a deadly weapon. See § 13A-1-2(11). However, we must address whether, in this particular case, the sandal may be categorized as a dangerous instrument. Section 13A-1-2(12), Ala. Code 1975, defines a "dangerous instrument" as "[a]ny instrument, article or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is highly capable of causing death or serious physical injury."
Section 13A-1-2(9), Ala. Code 1975, defines "serious physical injury" as "[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ."
The commentary to § 13A-1-2, Ala. Code 1975, states:
 "Many objects are not deadly per se and ordinarily have lawful functions and uses, but under subdivision (12) such object may constitute a `dangerous instrument' because it was used, or attempted to be used, in a manner rendering it `readily capable of causing death or serious physical injury.' (A stick, rock, pencil, or pen is capable of producing great harm or even death if jammed in a person's eye, ear or throat.) This definition essentially states previously existing law. The mere showing of a fist does not make out use of a weapon. Corcoran v. State, 18 Ala. App. 202, 89 So. 835 (1921). Normally a shoe does not constitute a deadly weapon under former section 13-1-43, but it could under given circumstances. Cozart v. State, 42 Ala. App. 535, 171 So.2d 77, cert. denied, 277 Ala. 698, 171 So.2d 84 (1964). An instrument or weapon used in inflicting injury may not be esteemed deadly, according to the manner of its use, and the subject on which it is *Page 195 
used. Sylvester v. State, 72 Ala. 201 (1882). In other words, a deadly weapon is not only a weapon with which death may be easily and readily produced, but one which is likely to produce death or great bodily harm from the manner in which it is used. Williams v. State, 251 Ala. 397, 39 So.2d 37 (1948)."
See Helton v. State, 372 So.2d 390, 393 (Ala.Cr.App. 1979) ("While . . . shoes are not deadly weapons per se, the manner of their use in particular situations may make them deadly weapons.").
Other jurisdictions have addressed the question whether a shoe may be categorized as a dangerous instrument. For instance, in People v. Green, 124 A.D.2d 1065, 508 N.Y.S.2d 725 (1986), the New York Supreme Court held that, where the state did not introduce at trial the spike-heeled shoe used in the assault, and in the absence of testimony that the shoe caused serious physical injury, there was insufficient evidence that a dangerous instrument was used during the assault. But cf. State v. Munoz,575 So.2d 848 (La.Ct.App. 1991) (where the defendant kicked the victim in the head so forcefully that the impact lifted the victim off the ground, the defendant's tennis shoe constituted a dangerous instrument); People v. Carter, 53 N.Y.2d 113,423 N.E.2d 30, 440 N.Y.S.2d 607 (N.Y. 1981) (rubber boot that caused the victim's head to hit the pavement with tremendous force constituted a dangerous instrument).
The state's evidence established the following. Cynthia Blevins, the victim, testified that the appellant was her former boyfriend. She stated that around 8:30 p.m. on June 10, 1998, the appellant telephoned her and asked her to bring him something to eat. Blevins stated that she then drove to a local service station and purchased a sandwich and chips for the appellant. Blevins then drove to the appellant's mobile home and told her son to ride his bicycle outside while she gave the appellant his food. According to Blevins, she walked inside the mobile home and discovered that the appellant was asleep. She testified that she awakened him and noticed that he appeared to be intoxicated. She stated that she asked him what he was "messed up on," and that the appellant grew angry and told her that he could "get f___ed up anytime he wanted to." (R. 13.) Blevins testified that she then walked outside and got into her car. According to Blevins, the appellant followed her, grabbed her car keys, pulled her out of the car by her hair, and repeatedly punched and kicked her. She stated that the appellant pushed her into the mobile home, and that he told her son to go inside the home.
Blevins further testified that the appellant was outraged and that he continued to hit her. She stated that he bit and kicked her face, broke her collar bone and nose, and choked her. Additionally, she stated, the appellant slung a hard rubber sandal at her "and hit [her] up the side of the head." (R. 17.) Blevins testified that the appellant hit her face with the sandal, and that she did not recall whether the appellant had hit her more than once with the sandal. Blevins stated that her son began to cry, and that the appellant picked him up and threw him into the bathroom. She further testified that she convinced the appellant to take her to the hospital.
Huntsville police officer William Lau testified that, during the early morning of June 11, he was dispatched to the hospital. He stated that, when he arrived at the hospital, Blevins was distraught, had bruises on her face, arms, and legs, and that her face and eyes were severely swollen.
In this case, the evidence presented at trial was insufficient to support a conviction of assault in the second degree. Specifically, the evidence at trial was insufficient to prove that the sandal, as used by the appellant, was a dangerous instrument. Although Blevins testified that she was hit in the face by a hard rubber sandal, the evidence did not establish what injuries, if any, were caused by the sandal. The only evidence presented to establish that the *Page 196 
sandal constituted a dangerous instrument was the victim's testimony that the appellant "slung" a hard rubber sandal and that the sandal hit her "up the side of the head." (R. 17.) The state did not introduce the sandal into evidence for the jury to see and did not provide testimony indicating which injuries, if any, were caused by the sandal. While the state offered into evidence the victim's medical record, which indicated that she had suffered several fractures and contusions, no evidence was presented that the sandal caused any of these physical injuries. Additionally, none of the evidence presented at trial indicated that the victim suffered any serious physical injury, as defined by § 13A-1-2, Ala. Code 1975. Given the particular facts in this case, we conclude that the state failed to establish that the sandal was used as a dangerous instrument and that it caused serious physical injury to the victim. Thus, even viewing the evidence in the light most favorable to the state, the evidence was insufficient to support a conviction for second-degree assault.
Because the state failed to prove that the appellant used a dangerous instrument during the assault, the evidence is insufficient to sustain the appellant's conviction of second-degree assault. We, therefore, reverse the appellant's conviction for assault in the second degree. However, there is sufficient evidence to support a conviction of the lesser included offense of third-degree assault, as defined in § 13A-6-22, Ala. Code 1975. Because the jury was instructed on the lesser-included offense of third-degree assault, we remand this case to the trial court with instructions to set aside the appellant's second-degree assault conviction and to enter a judgment on the lesser-included offense and to sentence the appellant accordingly. See Cobb v.State, 703 So.2d 878 (Ala.Cr.App. 1996).
REVERSED AND REMANDED WITH INSTRUCTIONS.
Long, P.J., and McMillan, J., concur; Cobb, J., concurs specially, with opinion, joined by Baschab, J.; Baschab, J., concurs specially, with opinion.
[1] In the appellant's motion for a court-ordered mental examination, his trial counsel avers that he "has attempted to complete trial preparations with [the appellant] on November 13, 1998, and [the appellant] was unable to communicate with the attorney on November 13, 1998, or to effectively assist in his preparation." (C. 26.) The appellant argues in brief that his trial counsel's statement verified his incompetence. We reject that argument, because the statement is conclusory and no facts were offered to illustrate or support the averment. Such a general averment cannot raise a "reasonable and bona fide doubt" as to the appellant's competence. Additionally, November 13, 1998, was the day after the appellant had been involved in a traffic accident; therefore, the fact that he was unable to communicate on that day is not persuasive with regards to his competency to stand trial.