First degree sodomy; sentence: life imprisonment without parole.
On November 11, 1980, appellant enticed two teenage brothers into entering an automobile with an offer to make money by helping to move furniture. After driving for nearly an hour, appellant stopped the vehicle and had the boys exit the vehicle. Appellant pulled a gun from under the seat and held it on the boys while he handcuffed them. After making the boys lower their pants, he ordered the younger thirteen-year-old brother to go act as a lookout. He then directed the older eighteen-year-old brother to lie down in the woods, where appellant proceeded to perform fellatio on him. After this act he drove the boys to Auburn High School, had them exit the *Page 478 
vehicle, and told them he would return shortly with the key to the house to move the furniture. Appellant did not return and the boys walked home. They reported the incident two days later to their mother and the police.
 I
Appellant argues the warrantless search of his vehicle violated his fourth and fourteenth amendment rights, and required the suppression of any evidence obtained thereby. The court's refusal to suppress such evidence, appellant insists, constituted error requiring reversal.
The police obtained a description of the vehicle appellant drove the day of the crime from the two teenage victims. After locating a vehicle which matched the description, police took the boys to view it on the night of November 18, 1980. The vehicle, which was parked outside appellant's mobile home, was identified by the boys as the same automobile. On December 4, 1980, officers again returned to the mobile home and took pictures of the appellant, with his permission. The victims were able to identify appellant from these pictures as the man who assaulted them. After failing to find the appellant at home on December 9, 1980, the officers returned and arrested appellant, with an arrest warrant, at his trailer in December, 1980. Appellant gave the officers the keys to the vehicle, and the automobile was impounded at police headquarters, where a warrantless routine inventory search was made. As a result of this search, police found a gun and a pair of handcuffs in the vehicle which the victims were able to identify as those used by appellant during the crime.
Appellant argues this case is virtually identical to the facts found in Coolidge v. New Hampshire, 403 U.S. 443,91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and is not an appropriate case to be decided under the inventory search exception created by South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092,49 L.Ed.2d 1000 (1976). Although we believe appellant's substantive argument is without merit, we find it unnecessary to reach that question because, in our opinion, appellant lacks standing to raise this issue. See Reid v. State, 388 So.2d 208
(Ala. 1980); Jones v. State, 407 So.2d 870 (Ala.Cr.App. 1981).
At trial, appellant testified and denied ownership of both the automobile and the articles found therein. He presented further testimony which established ownership of both the vehicle and of its contents in persons other than himself. He also denied having been in that vehicle or having committed the assault on the day the crime occurred, and presented alibi evidence supporting his contention.
Appellant made no assertion of a property or possessory interest in the vehicle or the property seized at any time, and in fact specifically denied and refuted any assertion of the same. Therefore, he has no standing to contest the search.
The burden was upon appellant to establish that his own
individual constitutional rights were violated by the challenged search and seizure. McCraney v. State, 381 So.2d 102
(Ala.Cr.App. 1980); Brown v. State, 339 So.2d 125 (Ala.Cr.App. 1976). Appellant not only failed to carry this burden, but specifically negated its establishment by his own in-court admissions. Collier v. State, 413 So.2d 403 (Ala. 1982).
 II
Appellant alleges that statements he made to police, after having previously invoked his right to counsel, and having subsequently stated he would not talk with police, were erroneously admitted at trial.
Although appellant's argument appears pursuasive at first blush, a close scrutiny of the underlying facts reveals it is without merit. Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances surrounding each case, including the background, experience, and conduct of the accused. Edwards v.Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *Page 479 
Appellant was initially arrested on this charge in December, 1980, at which time he was advised of his constitutional rights in Opelika, Alabama. Appellant informed Officer Gary Knight that he did not wish to make a statement and that he desired the assistance of an attorney. Officer Knight immediately ceased any further attempt to interrogate appellant. Appellant retained the present trial counsel to represent him and was subsequently released on bond. Three months later, on March 30, 1981, appellant was again taken into custody by Officer Knight and another officer in Saraland, Alabama, for transportation back to Opelika, Alabama, in relation to the instant charge. Upon seeing Officer Knight in Saraland, appellant immediately volunteered that he had given an alias name at the time of his initial arrest. Appellant was taken into custody and handcuffed with "Billy chains." Appellant was placed in the back seat of the patrol car, while the two officers sat in the front seat.
As the officers left Saraland headed towards Opelika, appellant was again advised of his constitutional rights. Appellant interrupted the officer and told him he knew his rights, and that he was not going to talk. The record reflects the following then occurred:
 "Q Referring to your memorandum that you have been referring to, I will ask you to do so now, and look in the second paragraph and see if there is not a statement where you said that Lieutenant Knight, you said that `he,' referring to the defendant, knew his rights and was not going to talk; is that in that memorandum?
"A That's what it says.
 "Q And yet you continued to interrogate the defendant?
"A No, sir.
"Q Well, you did ask him questions, didn't you?
 "A He voluntarily started talking himself. I did not interrogate him.
 "Q But you're telling this jury that everything he said was voluntary and that you didn't ask a question that was soliciting an answer?
"A No, sir, I'm not saying that.
"Q Well, it wasn't voluntary, then?
"MR. MYERS: We object to that.
"THE COURT: Overruled. Go ahead.
"Q It wasn't voluntary then, was it?
"A Certainly it was.
"Q Sir?
"A Yes, sir. It certainly was.
 "Q Wasn't it in response to questions that were asked by you and Mr. Meadows?
"A No, sir, not all of it.
"Q All right. He made some voluntary statements?
"A Yes, sir.
 "Q But some questions were asked by you, were there not?
"A Yes, sir, there were.
. . . .
 "Q I would ask you this then: He made some voluntary statements; you pursued it from there, did you not, Mr. Knight?
"A I followed up with questions, yes, sir.
 "A The fact is, he volunteered or gave some other information in response to your interrogatories, didn't he?
"A Yes, sir, he did.
. . . .
 "Q But you did ask questions of this witness, after he said he didn't want to give any statement? According to your memorandum.
"A He did not say he didn't want to give a statement.
 "Q I'm extracting again from the memorandum. It said, `He knew his rights and was not going to talk.' That's part of this memorandum, —
 "A He said, `I know my rights, but I'm not going to talk. I'm not going to tell you anything, and —'
"Q Isn't that what this —
"A — I told him —
"MR. MYERS: Let him finish.
 "MR. WHITTELSEY: Let him answer my questions Mr. Myers.
"THE COURT: Well, he hadn't finished his answer. *Page 480 
"You may finish your answer.
 "A And I told the defendant that he must understand his rights, that I've got to finish advising him of his rights. I finished advising the defendant of his rights, and he began talking on his own free will.
"Q And then you asked questions?
"A I followed up with questions, yes, sir."
It is clear from the record that upon appellant's first arrest, his request for counsel and decision not to make a statement were immediately and totally complied with by the law enforcement officials. Upon his second arrest, he did not again demand counsel, but merely stated that he was not going to talk. However, on his own volition, appellant changed his mind and began to talk. It was only after appellant began to volunteer information about the case, that the officers began to ask follow-up questions about the statements appellant was making.
While appellant testified at trial that the officers continued to interrogate him in the car after he refused to talk, there was sufficient evidence before the trial court to find that appellant initiated the conversation. The trial court is not required to accept the testimony of the appellant as to voluntariness where there is substantial testimony by other witnesses sufficient to establish a voluntariness predicate.Simpson v. State, 401 So.2d 263 (Ala.Cr.App.), cert. denied,401 So.2d 265 (Ala. 1981).
Although appellant relies on Edwards, supra, as authority for reversal, the facts herein differ markedly from those inEdwards. In Edwards, appellant asserted his right to counsel on one day, and the police, without furnishing him counsel, returned the next morning to confront him, at which time they obtained his incriminating statement. Here, appellant's request for counsel was not only immediately complied with, but appellant was also released on bond for three months before again being confronted by the police. Certainly, there is no doubt that all interrogation ceased until appellant had ample opportunity to consult with the counsel of his choice. Further, the second confrontation with police was not as the result of an interrogation, but was rather a second and separate arrest of appellant some three months later. Appellant at the time of his second arrest made no request for counsel. Although he indicated initially that he was unwilling to make a statement, the evidence indicates appellant changed his mind, and of his own accord began to make a statement. After being advised of his rights, an accused may himself validly waive his rights and respond to interrogation. Edwards, supra. While the safeguards are more strict when the accused requests counsel, no such request was made at the time of the second arrest, and appellant's request for counsel at the time of his initial arrest had already been complied with.
We note also that while this second encounter with police was not at the initiation of the accused, neither were appellant's statements regarding the case made as a result of questioning or its functional equivalent by the police. Rhode Island v.Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
The fact that a defendant has legal counsel does not, as a per se rule, prohibit law enforcement officials from procuring a statement of any kind from the appellant, without first giving notice to and receiving consent from his counsel. Nelsonv. State, 398 So.2d 421 (Ala.Cr.App. 1981). We hold that appellant was aware of his right to counsel, and had been allowed to consult with an attorney upon request. Considering the totality of the circumstances, we find that at the time of the second arrest, appellant knowingly and voluntarily waived his right to counsel and initiated the conversation with police without any form of questioning on their part. Edwards, supra;Trest v. State, 409 So.2d 906 (Ala.Cr.App. 1981).
No error harmful to the substantial rights of appellant having been demonstrated, this case is affirmed.
AFFIRMED.
All the Judges concur. *Page 481