[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1044 
Appellant, Larry Strickland, was indicted on March 26, 1986, by the Marengo County Grand Jury for the offense of sexual abuse in the first degree, in violation of *Page 1045 
§ 13A-6-66(a)(3), Code of Alabama 1975. The indictment charged Strickland with subjecting the victim to sexual contact, while he was over 16 years of age and she was less than 12 years of age. After trial, a jury found him guilty as charged in the indictment, and he was sentenced on October 15, 1986, to six years' imprisonment. He appeals, raising eight issues.
Appellant, a 29-year-old male, lived next door to the 3-year-old female victim. The victim testified that, while she was in appellant's home, looking at his goldfish, he pulled her pants down and "licked" her "on her bottom" and touched her on her bottom with his hands. Appellant testified that the victim and her younger sister came into his house to see his goldfish; that he picked up the victim and placed her on his hip so that she could better see the goldfish; that, in picking her up, he placed his right arm "up under her behind"; that, while holding her up in this position, she slipped, causing him to put his hand under her bottom to catch her; and that he then put her down and she left the house. He denied pulling down the child's pants, licking intimate parts of her body, or intentionally putting his hands on her intimate parts. He denied ever touching the child intentionally for the purpose of sexual gratification, and claimed that the only time he may have touched her on her bottom was when he was holding her and she slipped. The child testified that appellant picked her up so she could see the goldfish and that he touched her bottom when he was picking her up and putting her down. A medical examination of the child revealed no evidence of trauma and an intact hymen.
Several hours after the incident, appellant was arrested and transported to the Marengo County jail. He was advised of his rights in accordance with Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), when first placed in the police car and, en route to the jail, was informed of the charges against him. He was advised that he had been accused of "fondling" and licking the intimate parts of the alleged victim. On the way to the jail, he denied the accusations, even though he was not subjected to questioning. After arriving at the jail, he continued to deny the accusations until he "broke down" and began to cry. He then told the officers that he would tell them about it. After, he was again read his Miranda
rights, he signed a document waiving those rights, acknowledging that he understood them and agreeing to give a statement. The statement was recorded on tape and later transcribed. Both the tape and the written transcription were introduced in evidence at the trial, and the jury listened to the tape recording. In his statement, he admitted fondling the child, i.e., putting his hands in her panties, but denied licking her private parts.
 I.
Appellant's first four issues raised on appeal concern the admissibility of the videotaped deposition of the child victim. He contends that the statute authorizing videotaped depositions of children under 16 years of age in sexual abuse cases, §15-25-2, Code of Alabama 1975, is unconstitutional in that it violates the due process and confrontation clauses of Ala. Const. art. I, § 6, and the Sixth and Fourteenth Amendments of the United States Constitution. In the alternative, he contends that, if the statute is constitutional on its face, it was applied in his case in an unconstitutional manner and, thus, deprived him of his rights under the due process and confrontation clauses of the United States and Alabama constitutions. He contends that reversible error occurred when the state failed to follow the procedure prescribed in the statute for the taking of the deposition. He further contends that, prior to the taking of the videotaped deposition, the trial court failed to conduct a hearing to ascertain the competency of the child to testify and the necessity for asking leading questions.
The statute which authorizes the use of videotaped depositions in cases of sexual offenses against children is § 15-25-2, which states the following:
 "(a) In any criminal prosecution referred *Page 1046 
to in section 15-25-1,[1] the court may, upon motion of the district attorney, for good cause shown and after notice to the defendant, order the taking of a videotaped deposition of an alleged victim of or witness to said crime who is under the age of 16 at the time of such order. On any motion for a videotaped deposition of the victim or a witness, the court shall consider the age and maturity of the child, the nature of the offense, the nature of the testimony that may be expected, and the possible effect that such testimony in person at trial may have on the victim or witness, along with any other relevant matters that may be required by supreme court rule. During the taping of videotaped depositions, the attorney of the parents of the child would be allowed to be present at the tapings. If the court orders that a deposition of the victim or witness shall be had as provided herein, the district attorney shall make all necessary arrangements to have the same videotaped.
 "Such deposition shall be taken before the judge in his chambers or in such other suitable location as the court may direct and shall be conducted in the presence of the district attorney, the defendant and his attorney, and such other persons as the court in its discretion may permit, taking into consideration the welfare and well-being of the alleged child victim or witness. Examination and cross-examination of the alleged victim or witness shall proceed at the taking of the videotaped deposition as though the alleged victim or witness were testifying personally in the trial of the case. The state shall provide the attorney for the defendant with reasonable access and means to view and hear the videotaped deposition at a suitable and reasonable time prior to the trial of the case. Objections to the introduction into the record of such deposition shall be heard by the judge in whose presence the deposition was taken and unless the court determines that its introduction in lieu of the victim's or witness's actual appearance as a witness at the trial will unfairly prejudice the defendant, such videotaped deposition shall be entered into the record by the state in lieu of the direct testimony of the alleged victim or witness and shall be viewed and heard at the trial of the case.
 "(b) For the purposes of this section, 'videotaped deposition' means the visual recording on a magnetic tape, together with the associated sound of a witness testifying under oath to be entered in the record in a judicial proceeding.
 "(c) The supreme court may adopt rules of procedure regarding the taking and use of videotaped depositions in criminal proceedings and juvenile cases, as well as for the transcribing of such in the event the case is thereafter appealed.
 "(d) All costs associated with the videotaping of a deposition ordered pursuant to this chapter shall be paid by the state. The district attorney shall submit all such cost bills to the state comptroller for approval and payment from the fund entitled 'court costs not otherwise provided for.'
 "(e) All videotapes ordered pursuant to this chapter shall be subject to any protective order of the court for the purpose of protecting the privacy of the victim of the offense. (Acts 1985, No. 85-743, p. 1143, § 2.)"
On September 2, 1986, the district attorney moved the trial court to issue an order to take a videotaped deposition of the child victim's testimony to be used in lieu of her live testimony before the jury. As grounds for the motion, the district attorney alleged that the child is four years of age; that the nature of the testimony to be expected is sexual in nature, lurid and sordid; that it would be extremely embarrassing to the child and could cause her emotional and psychological damage if she testified in open court; and that she is shy and requires special handling during questioning. On the following day, September 3, the *Page 1047 
trial court without a hearing, without notice to appellant, and without making any findings of necessity or good cause, ordered the deposition to be taken on September 4. On September 3, appellant, having learned of the motion, filed written objections and, after the deposition and on September 5, he filed a motion to exclude the deposition. The objections and motion to exclude raised the issues now raised on appeal. On September 8, immediately before the commencement of the trial, a hearing was held on the objections and the motion to exclude, and they were overruled. At the conclusion of the hearing, the trial court stated its reasons for ordering the taking of the deposition. The court stated the following:
 "The fact that this is a three year old child, I think it would be traumatic to the child to testify in a courtroom in front of a jury and a large number of witnesses. That's the purpose, and I allowed the video deposition to be taken. . . . I find there is probable cause present to take the deposition of the minor child and that because of her tender years it would be appropriate to do so."
All issues raised on appeal pertaining to the deposition are properly before us for review.
 A.
Appellant contends that the use of the victim's videotaped deposition denied him the constitutional right of confrontation. The Sixth Amendment to the Constitution of the United States provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Sixth Amendment confrontation clause is held to be a fundamental right to which the states are subject by reason of the Fourteenth Amendment.Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923
(1965). Ala. Const. art. 1, § 6, provides, "That in all criminal prosecutions, the accused has a right . . . to be confronted by the witnesses against him."
As early as 1895, the United States Supreme Court held that the right of confrontation "must occasionally give way to considerations of public policy and the necessities of the case." Mattox v. United States, 156 U.S. 237, 243,15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). In Ohio v. Roberts, 448 U.S. 56,64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980), the Court held that, even though the confrontation clause reflects a preference for face-to-face confrontation at trial, "competing interests, if 'closely examined,' . . . may warrant dispensing with confrontation at trial." In California v. Green,399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Court summarized the purposes served by the confrontation clause. The three principal functions of confrontation, the Court stated, are: (1) to ensure that the witness testifies under oath; (2) to ensure that the witness undergoes cross-examination; and (3) to allow the jury to assess the credibility of the witness by observing the witness's demeanor as he testifies. Id. at 159,90 S.Ct. at 1935. See also Lee v. Illinois, 476 U.S. 530,106 S.Ct. 2056, 90 L.Ed.2d 514 (1986).
 "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers."
Davis v. Alaska, 415 U.S. 308, 315-16, 94 S.Ct. 1105, 1110,39 L.Ed.2d 347 (1974) (emphasis omitted), quoting 5 J. Wigmore,Evidence § 1395, at 123 (3d ed. 1970). See also Douglas v.Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).
In the instant case, we are dealing with a legitimate public policy competing with the right of confrontation. That policy is to protect child victims and child witnesses of sexual crimes from the further trauma of in-court testimony. The policy is not only designed to reduce psychological trauma to the victim or witness, but to produce more reliable testimony. Kelly, Legislative Responses to Child Sexual Abuse Cases: TheHearsay Exception and the Videotape *Page 1048 Deposition, 34 Cath.U.L.Rev. 1021 (1985). In response to this public policy, the Alabama legislature has enacted § 15-25-1 etseq. This policy must be weighed and balanced against the right of confrontation in child sexual abuse cases. Our statutory provisions permitting videotaped depositions and closed-circuit television transmission of testimony of victims and witnesses in child sexual abuse cases seek to strike a balance between these competing interests. Approximately half of the states have enacted statutes authorizing closed circuit television in such cases, and "33 states (including 19 of the 25 authorizing closed-circuit television) permit the use of video-taped testimony, which typically is taken in the defendant's presence." Coy v. Iowa, ___ U.S. ___ 108 S.Ct. 2798,101 L.Ed.2d 857 (1988) (O'Connor, J., concurring). Courts of other states have upheld the constitutionality of statutes similar to ours when they have been attacked on due process and confrontation grounds. See, e.g., McGuire v. State,288 Ark. 388, 706 S.W.2d 360 (1986); State v. Sheppard, 197 N.J. Super. 411, 484 A.2d 1330 (1984); State v. Vigil, 103 N.M. 583,711 P.2d 28 (1985).
We find that the principal functions of the confrontation clause are preserved by our statute providing for videotaped depositions in child sexual abuse cases. Our statute satisfies the right of cross-examination; the defendant is afforded the right to fairly and fully cross-examine the child during the deposition. The statute requires face-to-face confrontation between the child, the defendant, and his attorney at the time the deposition is taken. The jury has the opportunity to observe the child's demeanor during his or her testimony, including the cross-examination. We hold that our statute is not repugnant to the confrontation clauses of the United States and Alabama constitutions.
 B.
Appellant contends that the statute authorizing videotaping of testimony of a sexual offense victim or witness denies him due process of law. "A fair trial in a fair tribunal is a basic requirement of due process." In re Murchison, 349 U.S. 133,136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1965). The Supreme Court stated in Estelle v. Williams, 425 U.S. 501, 503,96 S.Ct. 1691, 1692, 48 L.Ed.2d 126 (1975), that "[t]he right to a fair trial is a fundamental liberty secured by theFourteenth Amendment."
 "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process.
". . .
 "Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. . . . But its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined. Berger v. California, 393 U.S. 314
[89 S.Ct. 540, 21 L.Ed.2d 508] (1969)."
Chambers v. Mississippi, 410 U.S. 284, 294-95, 93 S.Ct. 1038,1045-46, 35 L.Ed.2d 297 (1973). In reviewing legislatively authorized procedures that could impact upon fundamental constitutional rights, such as those with which we are concerned in the instant case, the legislation must be closely scrutinized in light of reason, principle, and common human experience. Estelle v. Williams, supra.
We have scrutinized our statute in light of the suggestions contained in Estelle v. Williams. The statute reflects legislative recognition of a compelling and legitimate state interest in protecting children in sexual abuse cases from the traumatic experience of testifying in open court. The statute, while protecting the children, also protects the defendant's fundamental rights by requiring that the videotaped deposition be taken only after a motion has been filed by the district attorney and notice given the defendant; that it be taken only after good cause has been shown for taking it; that it be taken before *Page 1049 
the judge with the prosecuting attorney, defense counsel, and defendant present; and that full examination and cross-examination is allowed in the same manner as if the examination of the witness is occurring in open court. We are of the opinion that the statute provides the least restrictive means of carrying out the legitimate state interest involved and does not result in any significant diminution of the basic rights of the defendant. It is our further opinion that the resulting videotaped recording is at least as reliable as, if not more reliable than, the testimony that would otherwise have been given in open court. We find that our statute is not repugnant to the due process clauses of the United States and Alabama constitutions.
In summarizing, we conclude that our statute permitting such videotaped deposition is constitutional.
 C.
Appellant contends that the trial court committed reversible error by permitting the taking of the videotaped deposition and admitting it into evidence at trial without following the procedural requirements of the statute. He also contends that the failure to follow the statutory requirements, coupled with the manner in which the deposition was taken, deprived him of his constitutional rights to due process and confrontation.
He argues that the trial court erred in allowing the child victim to testify by videotape because good cause was not shown; that the trial court failed to conduct a hearing to ascertain the competency of the child to testify; that the trial court abused its discretion in allowing leading questions to be asked the child during the taking of the deposition; that the court failed to conduct a hearing on the district attorney's motion for an order to take the deposition; that the deposition was not filmed by impartial personnel; that undue emphasis was placed upon certain responses of the child by the close-up focusing or zooming-in of the camera prior to and after certain crucial questions were asked; that the presence of an investigator in the room during the taking of the deposition unduly influenced the testimony of the child; that a short rehearsal session was conducted just prior to the taking of the deposition which was filmed but erased, and appellant was not aware of what occurred during that practice session; and that the statute is unconstitutional for its failure to require a showing that the deposed witness is unavailable to testify in person at the trial before admitting the deposition into evidence.
The statute obviously contemplates a procedure whereby the district attorney desiring to use a videotaped deposition of a child in a sex abuse case must file a motion with the trial court seeking an order for permission to take the deposition, notice of the filing of the motion must be given the defendant, a hearing should be held and the defendant given an opportunity to present evidence in opposition to the motion and otherwise oppose the motion. After hearing the parties and considering the evidence presented, the trial court may order the deposition to be taken if it finds good cause for doing so. The statute does not require a formal finding of fact to support good cause for the taking of the deposition; however, we think the better practice would be for the trial court to make such a finding and enter it into the record of the proceeding. We are of the opinion that, in order for the trial court to justify a finding of good cause, the record should reflect some evidence before the court from which it could conclude that live testimony in the courtroom would be traumatic to the child. Obviously, these proceedings should occur prior to the taking of the deposition. We do not believe that age alone justifies a finding of good cause. In other words, there should be no presumptions of trauma.
In the instant case, the order to take the deposition was issued without a hearing and without prior notice to appellant. The deposition was taken over the objections of appellant; however, appellant and his counsel were present and accorded full opportunity to cross-examine the child and, later, were given the opportunity to view the *Page 1050 
tape prior to trial. Finally, just before trial commenced and on the day of trial, appellant was accorded a hearing on his objections to the taking of the deposition and on his motion to suppress the deposition. The trial court denied the motion and overruled the objections, finding that it would be traumatic to the child to testify in open court and that "probable cause" was shown for taking the deposition.
 1.
The only good cause shown by the state was the allegations contained in the district attorney's motion. No testimony was offered as to the effect testifying in court would have on the child. However, the trial court did conduct a hearing, at which he found good cause, albeit after the videotaped deposition had been taken. Nevertheless, the finding was made prior to trial and prior to the deposition being admitted into evidence. At the hearing, the trial court heard evidence presented by appellant, as well as arguments of counsel. In addition, the court had the opportunity to observe the child testify during the filming of the deposition. It therefore had first-hand knowledge as to how she would react to direct and cross-examination. We think that, based on these observations, including the age of the child, the trial court's determination of good cause and its order to allow the deposition into evidence was reasonable and proper under the circumstances and was supported by the evidence before the court. It is obvious that the preferable way for the trial court to make a good cause determination is for the court to do so after a hearing, held prior to the actual taking of the deposition and wherein evidence is presented as to the effect testifying in court would have on the child. However, in our opinion, the absence of such testimony in this case and the delay in making a finding are not fatal to the trial court's finding of good cause. Even though the procedure followed was irregular, the end result did comply with the statute, and no prejudice resulted to appellant.
 2.
Appellant complains that the trial court failed to conduct a hearing to ascertain the competency of the witness to testify. We find no merit to this contention. Section 15-25-3(c) provides the following: "Notwithstanding any other provision of law or rule of evidence, a child victim of sexual abuse or sexual exploitation, shall be considered a competent witness and shall be allowed to testify without prior qualification in any judicial proceeding." In addition, the trial court had the opportunity to observe the child testifying and to hear her answers to the questions asked. Her testimony shows that she understood the necessity to tell the truth, had a fair knowledge of the facts and circumstances surrounding the incident, and responded forthrightly and with a minimum amount of difficulty. In spite of her age, she stood up under cross-examination.
 3.
At the beginning of the videotaped deposition, the district attorney sought permission of the trial court to ask leading questions. The trial court granted permission. Appellant contends that the court abused its discretion in allowing leading questions. We do not agree. Leading questions were clearly warranted in this case, due to the tender age of the child and in the interest of justice. § 15-25-1.
 4.
Appellant contends that error was committed by the trial court's failure to conduct a hearing on the district attorney's motion for an order authorizing the taking of the deposition. We have held that a hearing was held which satisfied the statutory requirements even though it came after the deposition had been taken.
 5.
Appellant complains that the deposition was filmed by a person who was not impartial. The person operating the camera was an investigator in the district attorney's office and, thus, obviously not completely disinterested in the proceedings; however, there is no evidence in the record *Page 1051 
from which it could be reasonably concluded that he was not impartial in setting up the equipment and filming the deposition. Section 15-25-2(a) provides that the district attorney shall make all necessary arrangements to videotape depositions. It goes without saying that the district attorney should arrange for an accurate and completely impartial filming of the deposition. The statute provides for payment for taking the deposition, and thus implies that someone outside the law enforcement agencies can be employed for that purpose. §15-25-2(d). Many court reporters are equipped to take such depositions.
 6.
Appellant contends that undue emphasis occurred, requiring reversal of the case, when the camera operator focused on the child's face during a critical part of the questioning. We have viewed the videotaped deposition and find that the operator "panned" the camera from the witness to the attorneys and appellant on at least one occasion, and when the child was asked the critical question of what appellant had done to her, the camera focused or zoomed-in on her face. After considering the circumstances surrounding the taking of the deposition and, particularly, after carefully viewing the deposition itself, we conclude that the focusing on the child's face, in thisinstance, did not place such emphasis on that portion of her testimony as to require a reversal. However, we emphasize that our condonance of these camera theatrics is firmly limited only to the facts in this cause. We strongly caution that, under another set of facts, we would not hesitate to reverse on the use of the same filming procedures as used in this case, for such filming tactics are highly objectionable and fraught with the strong potential for abuse.
Although the statute does not undertake to prescribe a particular setting for the taking of a videotaped deposition, we believe that, since the statute surely envisions the production of evidence which is reliable and which can be used in court, the statute contemplates an environment for the taking of the deposition substantially comparable to a trial and one that approximates a traditional courtroom setting. Cf.United States v. Benfield, 593 F.2d 815, 821 (8th Cir. 1979) (wherein the court withheld approval of use of electronic video technology until it was confronted with a situation "[w]here the parties agree to a given procedure or where the procedure more nearly approximates the traditional courtroom setting"). The trial judge, who is required by statute to be present during the taking of the deposition, § 15-25-2(a), should take the necessary measures to insure the fairness and impartiality of the proceedings and the reliability of the deposition.
 7.
We have examined and found no merit in appellant's contentions that the presence of an investigator in the room during the taking of the deposition unduly influenced the testimony of the child; that a rehearsal session which was taped and erased and held out of appellant's presence constituted error; that the failure of the state to make a showing, before the deposition was admitted, that the child was unavailable to testify constituted error; and that the statute was unconstitutional for failing to require such showing.
 II.
Appellant next contends that it was reversible error to permit the victim's mother to testify concerning the complaint made by the victim shortly after the occurrence of the alleged incident. Appellant argues that the testimony constituted inadmissible hearsay and that it was an attempt by the prosecutor to bolster the child's testimony by inadmissible evidence of prior consistent statements. The victim's mother was called to the witness stand by the state during the presentation of its case-in-chief and, after answering some general background questions, she testified that the victim had made a complaint to her shortly after the alleged incident occurred. She did not testify concerning the details of the complaint. After she testified, the prosecution *Page 1052 
presented the videotaped deposition. Immediately after presenting the deposition, the prosecution recalled the mother, having reserved the right to do so, and the following occurred:
 "Q. Donna, you saw the videotape of the testimony of Christine, did you not?
"A. Yes, sir.
 "Q. Was her testimony consistent with the report she made to you on —
 "MR. POOLE [defense counsel]: I object, Your Honor. It's improper. It's hearsay.
"THE COURT: You want to argue?
 "MR. WATKINS [prosecuting attorney]: I don't think it's improper. I asked her if it was consistent, anything different. She's not testifying as to what she said. She is going to tell us whether or not she told her the same thing she told you.
 "MR. POOLE: It's objectionable. It's hearsay. He just previously asked her about a report, and now he asks her this. I believe it's improper.
 "THE COURT: You have the testimony of the child that she told her mother, and now you want to ask the mother what was told her?
 "MR. WATKINS: I want to ask her if what she testified to is consistent with what she told her when she reported it to her.
 "THE COURT: Overrule that objection. I'll allow it.
"MR. WATKINS (resumed):
"Q. You may answer the question.
"A. What is it?
 "Q. Is what you saw in her testimony consistent with the report which she made to you as to what happened to her?
"A. Yes, sir."
The rule with which we are concerned here was set out inBarnett v. State, 83 Ala. 40, 44, 3 So. 612 (1887), as follows:
 "When the complaint does not constitute a part of the res gestae, but is received only in corroboration of the prosecutrix's testimony, the general rule is, that the details or particulars can not be introduced, in the first instance, by the State. This would exclude any statement made in the complaint pointing out the identity of the person accused, or explaining the injuries claimed to have been received during the alleged perpetration of the crime, or otherwise giving the minute circumstances of the event. [Citations omitted.]
 "But there are two cases at least where, under the authorities, the details of such complaint may be proved: (1.) They may be elicited, on cross-examination, by the defendant; and where this is done only in part, the State may then proceed to prove, on the rebutting examination, the whole complaint. (2.) Where the testimony of the prosecutrix is sought to be impeached, by attempting to discredit her story, it is permissible, by way of corroboration, for the State to prove such details, and, according to many of the authorities, also to prove that she told the story the same way to others, confirmatory of her first statement. [Citations omitted.]"
See also Cox v. State, 280 Ala. 318, 193 So.2d 759 (1967);Griffin v. State, 76 Ala. 29 (1884); McMorris v. State,394 So.2d 392 (Ala.Cr.App. 1980), cert. denied, 394 So.2d 404
(Ala. 1981), cert. denied, 452 U.S. 972, 101 S.Ct. 3127,69 L.Ed.2d 983 (1981); Brooks v. State, 8 Ala. App. 277, 62 So. 569
(1913); C. Gamble, McElroy's Alabama Evidence § 178.01 (3d ed. 1977); J. Niblack, Underhill's Criminal Evidence, § 667 (4 ed. 1935).
In the case at bar, counsel for appellant sought to impeach the child victim by attempting to discredit her story when he asked her the following question on cross-examination: "Has your mother or daddy told you you need to come here and tell that Larry Strickland did something to you? Yes or no?" In attempting to discredit her by casting doubt upon her testimony in this manner, appellant opened the door for introduction of evidence by the state to sustain or corroborate the child by showing that her statements in making the complaint correspond with her testimony at trial. While the question asked the mother in this regard may have been objectionable as to its form, it was not objectionable on *Page 1053 
the hearsay ground asserted by appellant. It would have been better practice to ask the mother for the details of the complaint rather than to elicit the information in such a shorthand fashion. Nevertheless, the testimony of the mother in substance is that the complaint of the child as to what had been done to her conformed to what the child testified to in her deposition, and we believe it was admissible in this instance. The trial court did not err in overruling appellant's objection.
We point out that the complaint of the child was not offered as a part of the res gestae or as a spontaneous exclamation, and no issue has been raised as to the timeliness of the complaint.
 III.
Appellant next challenges the sufficiency of the evidence to support his conviction. We deem it unnecessary to restate the evidence set out above or to enlarge upon it. From our review of the entire record, we conclude, without hesitation, that there is ample credible evidence to sustain the conviction. If the testimony of the child be believed, appellant pulled her pants down and licked her on her bottom and touched her on her bottom with his hands. We think her testimony was sufficient to support a finding that appellant did sexually abuse the child as charged in the indictment.
 IV.
Appellant contends that the admission of the inculpatory statement which he gave police shortly after he was taken into custody constituted reversible error. He contends that the statement was "not voluntary and knowingly made but was rather the result of law enforcement officers' pressure and coercion; that the interrogation was misleading; and portions of the interrogation were not tape recorded."
A statement made subsequent to an arrest is prima facie involuntary and inadmissible at trial; thus, the state must prove the statement was voluntarily made and must lay aMiranda predicate before the statement is admissible. Thomas v.State, 373 So.2d 1167 (Ala. 1979), vacated on other grounds,448 U.S. 903, 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); Jackson v.State, 516 So.2d 726 (Ala.Cr.App. 1985). Whether a waiver is voluntarily, knowingly, and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances. Chandler v.State, 426 So.2d 477 (Ala.Cr.App. 1982) (citing Edwards v.Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981));Jackson v. State, supra.
In the instant case, the evidence presented at the hearing on the motion to suppress shows that appellant was fully advised of his Miranda rights on two separate occasions prior to making the statement, first, when arrested and placed in the police car and, again, just before the taking of the statement. On each occasion, he acknowledged that he understood his rights, and on the second occasion he signed a written statement acknowledging that he understood his rights, waiving them, and agreeing to make a statement. The taped statement included theMiranda warnings and waiver. No promises were made to appellant to obtain his statement, nor was there any evidence of threats or coercion. There was no evidence that appellant was under the influence of drugs or alcohol. He was 29 years of age and a high school graduate. The manner in which he answered the questions put to him and the context of his answers indicate voluntariness.
Our review of the totality of the circumstances surrounding the taking of the statement, as well as the statement itself, convinces us that the statement was voluntarily given after a knowing and intelligent waiver of appellant's Fifth Amendment rights. Appellant's assertion, in his brief, that the statement was obtained by "pressure and coercion" is not supported in the record.
We find no merit to appellant's contention that the interrogation was misleading. The officers were under no obligation to advise appellant, prior to questioning him, of the elements of the crime for which he had been arrested. The officers *Page 1054 
had no duty under the circumstances to advise appellant of the distinction between intentional and unintentional touching. Appellant's answers to the questions speak for themselves.
Appellant's contention that portions of the interrogation were not tape recorded or included in the transcription is, likewise, without merit. The record fails to support his contention.
For the above reasons, we find that appellant's statement was properly admitted into evidence.
 V.
Last, appellant contends that the trial court committed reversible error by refusing to give his requested written jury instructions numbered 1 and 2. The instructions are similar and concern the elements of the offense charged which require that the alleged wrongful act be willful, intentional, and for the purpose of gratifying the sexual desires of either party. The requested instructions were fully covered in the trial court's oral charge to the jury.
For the above reasons, we find that the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.
[1] Section 15-25-1 refers to "any criminal prosecution for a sexual offense wherein the alleged victim is a child under the age of 16 years and . . . any criminal prosecution involving the sexual exploitation of a child under the age of 16."