The petitioner, John E. Woods, was convicted of capital murder — murder during a robbery in the first degree, Alabama Code 1975, § 13A-5-40(a)(2) — and was sentenced to life imprisonment without parole, via § 13A-5-45(a). The Court of Criminal Appeals affirmed Woods's conviction and sentence on April 11, 1991. Woods v. State, 592 So.2d 631 (Ala.Cr.App. 1991). We granted certiorari review to determine whether the trial court had erred in failing to suppress a statement made by Woods to police officers. We conclude that the trial court did not err, and we quash the writ as having been improvidently granted.
The record reflects that Woods was arrested on July 21, 1989, incarcerated in the Jefferson County jail, and charged with capital murder. On July 27, 1989, Woods appeared in the district court, was found to be indigent, and requested an attorney; the district court judge appointed an attorney to represent him.
On July 31, 1989, Sgt. Paul Martin and Sgt. Clanton of the Birmingham Police Department's Robbery/Homicide Division went to the Jefferson County jail to talk to Woods. The officers were not aware that an attorney had been appointed to represent him, and he did not inform them of that fact. They did read him the Birmingham *Page 637 
Police Department's Miranda[1] rights form, which states that the accused has the right to an attorney. Woods signed the Miranda
rights form after it was read to him, indicating that he understood that he had the right to an attorney, but he still did not inform the officers that an attorney had been appointed for him. Woods stipulates that he signed the form.
The police officers then asked Woods his whereabouts on the night of the murder. Woods told them he had been with a man whom he first called "James" and then called "Gerald" and that they had been drinking. He described an argument between Gerald and the victim over the amount of cocaine to be bought. The police asked Woods where they could find Gerald. He said at the Masonic lodge. When the police questioned him further as to where the lodge was, Woods said that he wanted to see his attorney and that he did not have anything else to say. All questioning ceased at that time.
An indictment was returned against Woods during the December 1989 session of the Jefferson County Grand Jury, charging him with capital murder under § 13A-5-40(a)(2). Woods was formally arraigned and he entered a plea of not guilty. The case came on to be tried on May 29, 1990, in Jefferson County. At trial, Woods moved to suppress the statement he had made to the police officers. He contends that the failure of the trial court to suppress this statement violated his rights under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution.
There is a long line of cases requiring the police to follow fair procedures when they interrogate citizens. The best known of such cases is Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in which the United States Supreme Court established procedures designed to counteract the inherently compelling pressures of custodial interrogation; those procedures include informing the person being questioned of his right to have counsel present. 384 U.S. at 474,86 S.Ct. at 1627. The Miranda rights are based upon the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." In Miranda the Supreme Court held that when the person being questioned invokes his right to counsel, the interrogation must cease until an attorney is present. Id. The protections of Miranda
were reinforced in Edwards v. Arizona, 451 U.S. 477,101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), in which the United States Supreme Court established that once a person asserts the right to counsel, he may not be approached for further interrogation until counsel has been made available to him.
The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The rights of the accused under the Sixth Amendment have been held to attach "at or after the initiation of adversary judicial criminal proceedings — whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." UnitedStates v. Gouveia, 467 U.S. 180, 187-88, 104 S.Ct. 2292,2296-98, 81 L.Ed.2d 146 (1984). In Michigan v. Jackson,475 U.S. 625, 629, 106 S.Ct. 1404, 1407, 89 L.Ed.2d 631 (1986), the United States Supreme Court recognized that an accused has a right to counsel at postarraignment custodial interrogations, under both the Fifth Amendment protection against compelled self-incrimination and the Sixth Amendment guarantee of the assistance of counsel.
The courts of Alabama have followed the reasoning of these cases in holding that all custodial confessions are presumed involuntary:
 "A confession is prima facie involuntary and inadmissible, and the State must show voluntariness and a Miranda predicate in order to admit it. Thomas v. State, 373 So.2d 1167 (Ala. 1979), vacated on other grounds, 448 U.S. 903
[100 S.Ct. 3043, 65 L.Ed.2d 1133] (1980); Lewis v. State, 295 Ala. 350, 329 So.2d 599 (1976). Whether a waiver is voluntarily, knowingly *Page 638 
and intelligently made depends upon the particular underlying facts and circumstances of each case, including the background, experience, and conduct of the accused — the totality of the circumstances. Thomas v. State; Wright v. State, 340 So.2d 74 (Ala. 1976); Chandler v. State, 426 So.2d 477 (Ala.Crim.App. 1982) (citing Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Myers v. State, 401 So.2d 288
(Ala.Crim.App. 1981), and cases cited therein. The question of whether a confession or inculpatory statement was voluntarily made is one of law, to be determined by the trial judge. Marschke v. State, 450 So.2d 177 (Ala.Crim.App.), cert. denied, 450 So.2d 177 (Ala. 1984); Myers v. State. The finding of the trial judge will not be disturbed on appeal unless it appears contrary to the great weight of the evidence or is manifestly wrong. Marschke v. State; Minor v. State, 437 So.2d 651
(Ala.Crim.App. 1983); Balentine v. State, 339 So.2d 1063
(Ala.Crim.App.), cert. denied, 339 So.2d 1070
(Ala. 1976). The trial court need only be convinced from a preponderance of the evidence to find a confession or inculpatory statement to have been voluntarily made. Harris v. State, 420 So.2d 812
(Ala.Crim.App. 1982); Myers v. State."
Magwood v. State, 494 So.2d 124, 135-36 (Ala.Cr.App. 1985),aff'd, 494 So.2d 154 (Ala. 1986), cert. denied, 479 U.S. 995,107 S.Ct. 599, 93 L.Ed.2d 599 (1987).
The Court of Criminal Appeals offered the following reasoning for its holding that Woods's statement was properly admitted: First, because, it held, he waived his right to counsel under the Fifth Amendment by signing the Miranda rights form. Second, because the interview occurred prior to Woods's indictment or preliminary hearing, it held, the officers had the right to inquire if he wanted to make a statement. Peoples v. State,510 So.2d 554 (Ala.Cr.App. 1986), aff'd, 510 So.2d 574 (Ala. 1987),cert. denied, 484 U.S. 933, 108 S.Ct. 307, 98 L.Ed.2d 266
(1987).
We must now examine the circumstances of the present case to determine whether Woods, in fact, knowingly and voluntarily waived his rights. The evidence reflects that after theMiranda form was read to him, Woods signed the form. Woods did not tell the officers that he had counsel, nor did he ask to see his counsel until after he had made his statement. The officer who questioned Woods testified that no inducement, offer of reward, or threat was made to Woods and that his statement was voluntary. Sgt. Paul Martin testified as follows:
 "Q. [Mr. Neumann] What rights did you advise him of, please sir? If you would, read them:
 "A. [Sgt. Paul Martin] 'Before asking you any questions it is the law you must be advised of your following constitutional rights: You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish one. If you wish to answer questions now without a lawyer present, you still have the right to stop answering at any time. It is not necessary that you answer questions posed by a detective or any other Birmingham Police Department official prior to having a bond set by the court.' Then I signed it and dated it and then we went over, before he signed it, 'That I have read the above and understand fully each of these rights. Having these rights in mind, I wish to make a voluntary statement and answer any questions without contacting an attorney or having one present. No force, threats or promises have been used by anyone in any way to make me sign this. I sign this statement after having been orally advised of my constitutional rights set out above and understanding them in full.'
 "Q. That paragraph that you just read, did you read that to him or did he read it or did he appear to read it?
 "A. I went over it with him, I think I read it. I don't remember. I think I read it. *Page 639 
 "Q. And underneath that paragraph is there a place for a signature?
"A. Yes, sir.
"Q. And is there a signature below that paragraph?
 "A. Mr. Woods signed it and Sergeant Clanton signed it.
"Q. Mr. Woods signed it in your presence?
"A. Yes, sir.
 "Q. You have the time that you signed it by your signature, do you not?
"A. Yes, sir.
"Q. What time is indicated there?
"A. 4:02 p.m.
 "Q. And Mr. Woods has his signature here and the time he signed it . . .?
"A. Yes, sir.
"Q. What time is that?
"A. 4:04.
 "Q. Did Mr. Woods indicate to you that he understood those rights that you went over with him?
"A. Yes, sir.
 "Q. Did he indicate whether or not he wished to make a statement?
"A. Yes, sir.
 "Q. Before he made a statement did you offer him any hope of reward or promises —
"A. No, sir.
"Q. — to get him to make a statement?
"A. No, sir.
 "Q. Did you or anyone tell him it would be better or worse for him if he made a statement?
"A. No, sir.
 "Q. Did you or anyone threaten him or apply any violence to his person in any way?
"A. No, sir.
 "Q. In your opinion did he voluntarily make a statement to you?
"A. Yes, sir."
Woods was reminded by the restatement of the Miranda rights to him that he had the right to an attorney and was not obliged to make a statement. He had ample opportunity to tell the police that counsel had been appointed and that he did not wish to speak with the police. Instead of informing the police, he signed the Miranda waiver, indicating that he knew that he had the right to counsel, but that he chose to give a statement without counsel. Both waivers of rights and admissions of guilt are consistent with the individual responsibility that is a principle of the criminal justice system. There was a responsibility on Woods's part to stop the questioning when he wanted it stopped. The evidence is unrefuted that no threat, promise, or hope of any reward was made or offered to Woods. Woods offered no evidence to contradict the State's showing of voluntariness.
For the reasons stated above, the writ of certiorari is due to be quashed as having been improvidently granted.
QUASHED AS IMPROVIDENTLY GRANTED.
HORNSBY, C.J., and MADDOX, HOUSTON and STEAGALL, JJ., concur.
[1] 384 U.S. 436, 470, 86 S.Ct. 1602, 1625, 16 L.Ed.2d 694 (1966).